PEOPLE v HARVEY

Docket No. 57751. Submitted August 2, 1982, at Grand Rapids.—
Decided December 6, 1982.

Defendant, Fred L. Harvey, was tried in the Kent Circuit Court,
Woodrow A. Yared, J., on a charge of armed robbery. The jury
indicated that it could not reach unanimous agreement and the
trial judge *sua sponte* declared a mistrial. Defendant was
thereafter convicted of armed robbery following a second trial
in the Kent Circuit Court, Woodrow A. Yared, J. Defendant
appeals alleging the mistrial was improperly declared and,
therefore, the second trial was barred by the prohibition
against double jeopardy. *Held:*

1. The reading and extent of the reading is a matter confided
to the sound discretion of the trial court when a jury requests
the repetition of trial testimony. The court must exercise its
discretion to assure fairness and to refuse unreasonable re-
quests. However, the court may ask the jury to resume deliber-
ations with the knowledge that their request would be reviewed
again if needed.

2. The trial court did not abuse its discretion in denying the
jury's request to have certain portions of the testimony read
back to them. The trial court found that the jury's request was

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 76 Am Jur 2d, Trial § 1041 *et seq.*
Right to have reporter's notes read to jury. 50 ALR2d 176.
[3] 21 Am Jur 2d, Criminal Law § 260.
[4] 21 Am Jur 2d, Criminal Law § 244 *et seq.*
Supreme Court's views of Fifth Amendment's double jeopardy
clause pertinent to or applied in federal criminal cases. 50 L Ed
2d 830.
Limitations under double jeopardy clause of Fifth Amendment upon
state criminal prosecutions. 25 L Ed 2d 968.
[5, 6] 21 Am Jur 2d, Criminal Law §§ 285-287.
Double jeopardy after declaration of mistrial or discharge of jury in
federal court. 6 L Ed 2d 1510.
What constitutes accused's consent to court's discharge of jury or to
grant of state's motion for mistrial which will constitute waiver
of former jeopardy plea. 63 ALR2d 782.
[6] 21 Am Jur 2d, Criminal Law § 303.

unreasonable at that time but did not foreclose the possibility of having the testimony read at a later time. Further, the testimony requested by the jury was not the testimony of key witnesses.

3. Once a jury is impaneled and sworn, a defendant is placed in jeopardy and has a right to have his guilt finally weighed by that tribunal, unless he consents to the trial's interruption or a mistrial occurs because of manifest necessity. The defendant's consent will not be presumed in the absence of an affirmative showing on the record. Defendant's mere silence or failure to object to the discharge is not such consent, however, manifestation of defendant's consent to dismissal by counsel will suffice.

4. The discharging of the jury and the holding of a new trial does not result in double jeopardy where the trial court has reasonably concluded that the jury is unable to agree on a verdict. The trial court properly declared a mistrial on the basis of manifest necessity when the jury was unable to reach a verdict.

Affirmed.

1. TRIAL — READING TESTIMONY TO JURY — DISCRETION.

Both the reading and the extent of the reading is a matter confided to the sound discretion of the trial judge where the jury requests that testimony be read back to it; the trial court must exercise its discretion to assure fairness and to refuse unreasonable requests.

2. TRIAL — READING TESTIMONY TO JURY — ABUSE OF DISCRETION.

A trial court's decision to deny a jury's request to have certain trial testimony read back to it may be found not to be an abuse of discretion where the trial court found the request to be unreasonable at that time and did not foreclose the possibility of having the testimony read at a later time, where the court told the jury that not all requests are denied, but that at that time the rereading of certain testimony might place too much emphasis upon it, and where the trial was not a long trial and the testimony requested was not the testimony of key witnesses; a trial court may ask the jury to resume deliberations with the knowledge that their request would be reviewed again if needed.

3. CRIMINAL LAW — JEOPARDY.

A defendant is placed in jeopardy once a jury is impaneled and sworn.

4. CRIMINAL LAW — CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

The state is forbidden from twice putting a person in jeopardy for the same offense (US Const, Am V; Const 1963, art 1, § 15).

5. CRIMINAL LAW — JEOPARDY — DOUBLE JEOPARDY — CONSENT — MANIFEST INJUSTICE.

A defendant who has been placed in jeopardy has a right to have his guilt finally weighed by that tribunal and the state is precluded from bringing him to trial again for the same offense unless he consents to the trial's interruption or a mistrial occurs because of manifest necessity; the defendant's consent will not be presumed in the absence of an affirmative showing on the record; defendant's mere silence or failure to object to the jury's discharge is not such consent, however, manifestation of defendant's consent to dismissal by counsel will suffice.

6. TRIAL — JURY — DISCHARGING JURY — NEW TRIAL — DOUBLE JEOPARDY — INABILITY TO REACH VERDICT.

The discharging of a jury and the holding of a new trial does not result in double jeopardy where the trial court has reasonably concluded that the jury is unable to agree on a verdict.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Carol S. Irons,* Chief Appellate Attorney, for the people.

*George S. Buth,* for defendant on appeal.

Before: V. J. BRENNAN, P.J., and D. E. HOLBROOK, JR., and J. R. ERNST,* JJ.

V. J. BRENNAN, P.J. Following a jury trial, the defendant was convicted of armed robbery, MCL 750.529; MSA 28.797. Defendant was sentenced to a prison term of 6 to 15 years and appeals as of right.

The trial resulting in the conviction from which defendant appeals was the second in this case. In the first trial, the jury indicated that it could not reach unanimous agreement and the trial judge

* Circuit judge, sitting on the Court of Appeals by assignment.

*sua sponte* declared a mistrial. Defendant's sole claim of error on appeal is that the mistrial was improperly declared and, therefore, the second trial was barred by the prohibition against double jeopardy.

Defendant claims that because the jury failed to reach a verdict after the trial court allegedly abused its discretion in refusing the jury's request that certain portions of the testimony be read back, manifest necessity did not exist as would have justified declaration of a mistrial and retrial was barred by double jeopardy. The people maintain that the trial court did not err in refusing a request by the jury that it considered unreasonable under the circumstances, and that the declaration of a mistrial was justified in any event.

When the jury requests repetition of trial testimony, the reading and extent of the reading is a matter confided to the sound discretion of the trial court. A trial court cannot simply refuse to grant a jury request but must exercise its discretion to assure fairness and to refuse unreasonable requests. However, the court may ask the jury to resume deliberations with the knowledge that their request would be reviewed again if needed. *People v Howe,* 392 Mich 670, 675-676; 221 NW2d 350 (1974). Also, see *People v Henry Smith,* 396 Mich 109; 240 NW2d 202 (1976); *People v Joseph,* 114 Mich App 70; 318 NW2d 609 (1982); *People v Bonner,* 116 Mich App 41; 321 NW2d 835 (1982).

We find that in the present case, the trial court did not abuse its discretion in denying the jury's request.

During the first trial, the jury was instructed and began deliberations at approximately 3:30 p.m. The jury returned to the courtroom at 5:25 p.m. and the following exchange occurred:

"*The Court:* I understand the jury has some difficulty at arriving at a verdict, is this the case?

"*Mr. Foreman:* Yes, your Honor.

"*The Court:* Is it your judgment that if you deliberate a little longer that the jury can arrive at a verdict?

"*Mr. Foreman:* No, sir.

"*The Court:* Is it your judgment that if the jury came back tomorrow and started redeliberating at 9:00 o'clock in the morning that the jury could arrive at a verdict?

"*Mr. Foreman:* That might be possible.

"*The Court:* It could be possible?

"*Mr. Foreman:* We could possibly reach a verdict.

"*The Court:* All right, I think that we will do that then."

The jury was directed to return at 9:30 the following morning.

The transcript of proceedings on the next day begins with a statement by the trial court, at approximately 9:40 a.m., denying the jury's request to have the complainant's testimony and that of a police officer read back to them:

"*[The Court:]* I have received a question, gentlemen, from the foreman of the jury. It reads as follows: 'We need a copy of Mrs. Kaywood's testimony and Officer Kars' testimony.'

"We get this request several times from different jurors who want to hear parts of some of the witnesses' testimony read to them and sometimes we do it, sometimes we do not. But mostly we don't do it for the reason that it takes testimony out of context and gives it greater weight and emphasis apart from the general flow of the tesimony as it came in. And when you read part of somebody's testimony then it usually leads to the next question, well, what was the response to that question, what was the other witnesses' testimony.

"If this was a two or three week trial there might be some reason to read testimony back, but what we often

do even in that case then is read other parts of testimony on the point that that witness testified to in order to give the jury then a total picture of the testimony regarding certain aspects of the case so they are not getting bits and pieces of it and getting it overly emphasized.

"So, I would make the ruling at this time that we would not give you the reading of the testimony either of Mrs. Kaywood or Officer Kars' testimony. The jury will just have to do the best they can in attempting to recall what the testimony of these witnesses and all the other witnesses in the case showed.

"Did you have any comment, Mr. Buter, at all?

"*Mr. Buter [Prosecutor]:* No, sir.

"*The Court:* Mr. Quinn?

"*Mr. Quinn [Defense counsel]:* No.

"*The Court:* We would ask you then to start deliberating again please."

The jury left the courtroom at 9:45 a.m. After deliberating for approximately one-half hour, the jury again returned to the courtroom announcing it was deadlocked:

"*The Court:* Would the foreman please stand. I have a message here indicating that the jury cannot agree, is that the message, sir?

"*Foreman:* That's right, your Honor.

"*The Court:* Let me ask, do you feel if the jury deliberated for some time longer that they will be able to arrive at some verdict?

"*Foreman:* No, sir, I don't believe it.

"*The Court:* Is the deadlock in the jury such that longer deliberations would not be fruitful?

"*Foreman:* I believe that, your Honor.

"*The Court:* You feel the jury has carefully deliberated over this matter and that—

"*Foreman:* I think we have, yes.

"*The Court:*—everyone has exchanged their views and discussed the issues?

"*Foreman:* Yes.

"*The Court:* And you are unable to agree?

"*Foreman:* That's right.

"*The Court:* This is your judgment and conviction?

"*Foreman:* That's right, your Honor.

"*The Court:* Is this the judgment and conviction of each of the jurors?

"*Foreman:* Yes, sir.

"*The Court:* You feel you cannot agree. All right. This does happen that jurors often can't agree and in public parlance it is called a hung jury.

"The court would have to declare a mistrial. That means the case would have to be tried again and maybe 12 other jurors would be able to arrive at a verdict one way or the other, hopefully.

"If you cannot agree and you feel no further deliberations would be fruitful the court must then declare a mistrial and Mr. Buter, Mr. Klavins, do you have any comment at this point?

"*Mr. Klavins [Prosecutor]:* No, your Honor.

"*The Court:* Mr. Quinn?

"*Mr. Quinn:* No.

"*The Court:* The court then will declare a mistrial and dismiss the jury."

The trial court's response to the jury indicates that the court found that the request was unreasonable *at that time.* The trial court did not foreclose the possibility of having the testimony read at a later time. The court told the jury that not all requests are denied, but at that time the rereading of certain testimony might place too much emphasis upon it. In addition, it was not a long trial, and the court stated that *at that time* the jury should deliberate further. *People v Solomon,* 82 Mich App 502, 508-509; 266 NW2d 453 (1978). Thus, the court was exercising its discretion.

Further, the testimony requested by the jury in the instant case, that of the complainant and a

police officer, was not the testimony of key witnesses as the defendant claims. The central issue in this case was identification. Neither the complainant nor the police officer could identify the defendant as the man who committed the robbery. Several other witnesses testified as to their observations, including one witness who positively identified the defendant and noted the defendant's license plate. Under these circumstances, we find that the trial court considered the jury's request and exercised its discretion in denying the request as unreasonable at that time. Therefore, there was no error.

We next consider whether the trial court was justified in declaring a mistrial.

Once a jury is impaneled and sworn, a defendant is placed in jeopardy. *United States v Jorn,* 400 US 470, 479; 91 S Ct 547; 27 L Ed 2d 543 (1971). The Fifth Amendment to the United States Constitution and article 1, § 15 of the 1963 Michigan Constitution forbid the state from twice putting a person in jeopardy for the same offense. *People v Alvin Johnson,* 396 Mich 424, 430; 240 NW2d 729 (1976), *reh den* 396 Mich 992 (1976), *cert den* 429 US 951; 97 S Ct 370; 50 L Ed 2d 319 (1976). Once a defendant has been placed in jeopardy, he has a right to have his guilt finally weighed by that tribunal. Unless he consents to the trial's interruption, *or* a mistrial occurs because of manifest necessity, the state is precluded from bringing him to trial again for the same offense. *People v Alvin Johnson, supra.* Defendant's mere silence or failure to object to the jury's discharge is not such consent; in the absence of "an affirmative showing on the record", defendant's consent will not be presumed. *People v Alvin Johnson, supra,* pp 432-433. Manifestation of

defendant's consent to dismissal by counsel will suffice. *People v Hoffman,* 81 Mich App 288; 265 NW2d 94 (1978); *People v Blackburn,* 94 Mich App 711; 290 NW2d 61 (1980); *People v Grenke,* 112 Mich App 567; 316 NW2d 494 (1982).

The people do not contend that the defendant consented to the mistrial. Therefore, the question before us is whether a mistrial occurred because of manifest necessity.

The United States Supreme Court has characterized the judge's belief that the jury is unable to reach a verdict as "the classic basis for a proper mistrial". *Arizona v Washington,* 434 US 497, 509-510; 98 S Ct 824; 54 L Ed 2d 717 (1978).

"[I]n this situation there are especially compelling reasons for allowing the trial judge to exercise broad discretion in deciding whether or not 'manifest necessity' justifies a discharge of the jury. On the one hand, if he discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.' But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. If retrial of the defendant were barred whenever an appellate court views the 'necessity' for a mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court." (Footnotes omitted.)

Michigan courts have long held that where the

trial court has reasonably concluded that a jury is unable to agree on a verdict the discharging of the jury and the holding of a new trial does not result in double jeopardy. *People v Hall,* 396 Mich 650, 655; 242 NW2d 377 (1976); *People v Riemersma,* 104 Mich App 773; 306 NW2d 340 (1981); *People v Gardner,* 37 Mich App 520, 527-528; 195 NW2d 62 (1972), *lv den* 387 Mich 771 (1972).

We find that the trial court in the instant case properly declared a mistrial on the basis of manifest necessity when the jury was unable to reach a verdict.

Affirmed.