PEOPLE v STERLING

Docket No. 79570. Submitted December 5, 1985, at Detroit. Decided April 16, 1986.

Joe W. Sterling was convicted by a jury in the Recorder's Court of Detroit, Warfield Moore, Jr., J., of two counts of first-degree criminal sexual conduct. An earlier trial had resulted in a mistrial after the jury was unable to agree on a verdict. Defendant was sentenced to concurrent prison terms of thirty to sixty years and forty to seventy years. Defendant appealed, raising several issues.

The Court of Appeals *held:*

1. Defendant was denied a fair trial when the trial judge abandoned his mantle of judicial impartiality by invading the province of the prosecutor in questioning the complainant and another witness who testified in support of defendant's alibi defense. The trial judge's questions and comments were not designed to produce fuller and more exact testimony or to clarify points and elicit additional facts, but instead may well have been interpreted by the jury as indications that the trial court found the complainant's testimony to be credible in contrast to defendant's incredible alibi defense.

2. Defendant was denied a fair trial by the prosecutor's extensive questioning and argument about defendant's substitution of counsel, letters from defendant to the trial court about his case, and defendant's assistance with his defense in the form of taking notes and performing legal research. Such questions and argument were intended to depict defendant as a jailhouse lawyer and were not relevant to the issue of defendant's guilt. Moreover, this particular argument by the prosecution tended to chill defendant's exercise of his constitutional right to the effective assistance of counsel.

3. The Court of Appeals agreed with defendant's claims that

REFERENCES

Am Jur 2d, Criminal Law §§ 183 *et seq.,* 525 *et seq.*

Am Jur 2d, Evidence §§ 249 *et seq.*

Am Jur 2d, Rape §§ 105 *et seq.*

Am Jur 2d, Trial §§ 30 *et seq.*

See the annotations in the Index to Annotations under Fair and Impartial Trial; Rape.

the prosecution's questions about his sex life were not probative of his guilt; that the prosecution improperly implied during closing argument that there might have been other inadmissible evidence; and that the prosecution made an improper appeal to the civic duty of the jury to rid the community of rapists. These questions and arguments by the prosecution in conjunction with the comments characterizing defendant as a jailhouse lawyer resulted in manifest injustice.

4. The trial judge erred in allowing the testimony of police officers verifying the description the complainant gave in court of defendant as the same given to them shortly after the crime occurred. While third-party testimony may relate the circumstances and procedures surrounding an identification, it is not allowed to bolster the credibility of a witness by relating a consistent description given by the witness. Such testimony is allowed only to rebut impeachment testimony. The Court of Appeals found it unnecessary to consider whether this error alone, in the absence of an objection by the defense, would have required reversal since the Court of Appeals reversed defendant's conviction on issues discussed above.

5. The Court of Appeals found no merit in defendant's argument that resentencing is required because the trial judge denied his request to take a polygraph examination made after his conviction but before sentencing. The statute which provides that a defendant charged with a criminal sexual conduct offense be given a polygraph examination if the defendant requests it does not apply to defendant who had already been found guilty at the time he made a request for a polygraph examination.

6. The Court of Appeals found no merit in defendant's argument that the trial judge erred by instructing the jury during voir dire that the armed element of first-degree criminal sexual conduct was satisfied if the victim believed that defendant was armed. The reasonableness of her belief was not an issue at trial since her testimony was that she actually saw the knife.

7. The Court of Appeals did not agree with defendant that resentencing is required because the sentence recommendation in the presentence report was not specific as required by statute. The report's recommendation of incarceration fulfilled the statutory requirement.

8. Defendant's retrial was not barred by double jeopardy. The double-jeopardy guarantee does not bar retrial where, as in this case, the trial court had reasonably concluded that the jury was unable to agree on a verdict.

Reversed and remanded for a new trial before a different judge.

1. CRIMINAL LAW — TRIAL — EXAMINATION OF WITNESSES BY TRIAL JUDGE.

A trial judge in a criminal jury trial should avoid any invasion of the prosecutor's role and should exercise caution so that any questions asked of witnesses by him will not be viewed as being intimidating, argumentative, prejudicial, unfair or partial.

2. CRIMINAL LAW — TRIAL — FAIR TRIAL — EXAMINATION OF WITNESSES BY TRIAL JUDGE.

A defendant is denied a fair trial where, in a jury trial, the trial judge engages in examination of the defendant or his witnesses in such a manner and to such an extent that the jury could have perceived judicial rejection of the defendant's or his witnesses' credibility and inferred judicial support of the testimony of the prosecution witnesses.

3. CRIMINAL LAW — APPEAL — PROSECUTORIAL COMMENT.

A defendant's constitutional right to the effective assistance of counsel is violated, resulting in a miscarriage of justice, where the prosecutor's comments during closing arguments show a calculated and pervasive strategy of characterizing the defendant's actions as manipulative abuses of the legal system by a jailhouse lawyer; appellate review of such improper remarks is not precluded by the absence of an objection by the defense at trial.

4. RAPE — CRIMINAL SEXUAL CONDUCT — SEX LIFE OF DEFENDANT.

It is improper for a prosecutor to inquire into a defendant's sex life, inasmuch as such an inquiry is not probative of the defendant's guilt.

5. CRIMINAL LAW — EVIDENCE — IDENTIFICATION.

Testimony of a third party regarding an out-of-court identification of a defendant by the complaining witness may be admitted into evidence by a trial court if such testimony is limited to the circumstances surrounding the out-of-court identification; testimony by a third party bolstering the credibility of the complaining witness by relating a consistent description given by the complaining witness is allowed only to rebut impeachment testimony.

6. CRIMINAL LAW — EVIDENCE — POLYGRAPH EXAMINATIONS — STATUTES.

The statute which provides that a defendant who allegedly has committed criminal sexual conduct shall be given a polygraph examination if the defendant requests it does not apply to a defendant who makes a request after having been convicted of

the criminal sexual conduct charge (MCL 776.21[5]; MSA 28.1274[2][5]).

7. CRIMINAL LAW — PRESENTENCE REPORTS.

A presentence report recommending incarceration of a defendant complies with the statutory mandate that a presentence report include a specific written recommendation for disposition (MCL 771.14; MSA 28.1144).

8. CONSTITUTIONAL LAW — CRIMINAL LAW — DOUBLE JEOPARDY — MISTRIAL — HUNG JURY.

The guarantee against double jeopardy does not bar retrial of a defendant where the first trial court has reasonably concluded that the jury was unable to agree on a verdict (US Const, Am V; Const 1963, art 1, § 15).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Jan J. Raven,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *James A. Krogsrud*), for defendant on appeal.

Before: MACKENZIE, P.J., and D. F. WALSH and SHEPHERD, JJ.

PER CURIAM. Defendant, Joe Willie Sterling, was convicted of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(c); MSA 28.788(2)(1)(c), following a jury trial held in the Detroit Recorder's Court, Judge Warfield Moore, Jr., presiding. An earlier trial resulted in a mistrial when the jury was unable to agree on a verdict. Defendant was sentenced to concurrent terms of thirty to sixty years on the first count and forty to seventy years on the second count. Defendant raises a number of issues on appeal which he claims require reversal of his conviction. We agree that the conviction must be reversed and

the case remanded for a new trial before another trial judge.

The complaining witness, sixteen-year-old Deanita Partee, testified that on May 25, 1983, as she crossed a vacant lot in the vicinity of Forrest and Avery Streets in Detroit shortly after 8:00 A.M. on her way to school, defendant grabbed her from behind, threatened her with a steak knife and pulled her to a spot behind a nearby vacant school There, defendant forced her to perform fellatio on him and to submit to cunnilingus. Afterward, the man ran away. Partee testified that about two months later, she saw the defendant again on a basketball court behind another school in the same vicinity. She flagged down a passing police car, explained the situation and rode with the police back to the basketball court where she identified defendant.

At trial, defendant took the witness stand in his own behalf and presented an alibi defense. He testified that, although his normal working hours as a CETA employee for the Department of Human Rights were from 8:30 A.M. to 4:30 P.M., on the day in question he did not arrive for work until 10:00 A.M. because there was a problem with the plumbing in his sister's house where he was staying and he also had some work left to do on an overdue school paper. He testified that he finished the school work, walked several blocks to his cousin's house to use the bathroom, and then reported to work at 10:00 A.M.

Defendant's sister's testimony verified that there was a plumbing problem on the day in question and that her brother had left at about 8:00 A.M. but returned at 9:00 A.M.

Defendant also produced the testimony of Daryl Bailey, a fellow worker at the Department of Human Rights. He testified that he had received a

phone call from defendant at 8:30 A.M., explaining that he would be a little late.

Defendant first contends that he was denied a fair trial by numerous questions and comments of the trial judge. We agree that the trial judge's conduct in questioning witnesses constituted an abandonment of his mantle of judicial impartiality and denied defendant a fair trial.[1]

A trial court may question witnesses in order to clarify testimony or elicit additional relevant information. See MRE 614(b); *People v Pawelczak,* 125 Mich App 231, 236; 336 NW2d 453 (1983). However, the court's discretion in questioning witnesses is not unlimited. The court must avoid any invasion of the prosecutor's role and exercise caution so that its questions will not be intimidating, argumentative, prejudicial, unfair or partial. *People v Cole,* 349 Mich 175; 84 NW2d 711 (1957), *People v Jackson,* 97 Mich App 660, 662; 296 NW2d 135 (1980). The test is whether "a judge's questions and comments '*may* well have unjustifiably aroused suspicion in the mind of the jury' as to a witness' credibility, . . . and whether partiality '*quite possibly could* have influenced the jury to the detriment of defendant's case.' " *People v Redfern,* 71 Mich App 452, 457; 248 NW2d 582 (1976), citing *People v Smith,* 64 Mich App 263, 267; 235 NW2d 754 (1975) (Emphasis in original.)

Although defendant has referred to numerous instances of the trial court's comments and questions, the propriety of which are highly questionable, the following two instances especially invaded the province of the prosecutor and may have

---

[1] This is at least the third time we have had to reverse jury convictions from Judge Moore's court on similar grounds within the last three years. See *People v Hudgins,* 125 Mich App 140; 336 NW2d 241 (1983), and *People v Audison,* 126 Mich App 829; 338 NW2d 235 (1983).

influenced the jury to the detriment of defendant's case.

After the prosecutor's redirect examination of the complaining witness the trial court asked her the following questions:

> *Mr. Koch [Assistant Prosecutor]:* I have nothing further, Your Honor.
>
> *The Court:* Anything further, Mr. Binion?
>
> *Mr. Binion [Defense Counsel]:* No, Your Honor.
>
> *The Court:* Okay. Miss Partee, let me just ask these two questions.
>
> One, ma'am, on the date of May 25th, nineteen hundred and eighty three, did somebody come to you and grab you about the neck and that person being a male and he have a knife in his hand, did that happen?
>
> *A.* Yes.
>
> *The Court:* And did that happen out there on that lot which you've talked about in your testimony?
>
> *A.* Yes.
>
> *The Court:* And then were you subsequently taken by that person in whatever manner to a location behind Hancock School and there caused to perform fellatio upon that person?
>
> *A.* Yes.
>
> *The Court:* And did that person have a knife?
>
> *A.* Yes.
>
> *The Court:* And you testified that it was in the left hand or right hand, but whatever it was, it was in the hand of that person?
>
> *A.* Yes.
>
> *The Court:* And is it because of that, ma'am, that you did those things because of that knife?
>
> *A.* Yes.
>
> *The Court:* All right. And did he also perform fellatio on you in the manner in which you described?
>
> *A.* Yes.
>
> *The Court:* I mean cunnilingus.

*A.* Yes.

*The Court:* Sorry.

And, ma'am, are you certain that happened?

*A.* Yes.

*The Court:* There is no doubt in your mind it happened?

*A.* Yes, there is, it did happen.

*The Court:* And it was done by a male person?

*A.* Yes.

*The Court:* And, ma'am, you've seen the defendant sitting here in the courtroom and throughout these matters and you see him now, do you not?

*A.* Yes.

*The Court:* And is that the man that did those things on that date to you?

*A.* Yes, it is.

*The Court:* All right. I have nothing further.

Defense counsel's objection to the court's questions made a short time later outside of the presence of the jury was overruled.

We agree with defendant that the trial court's questions were not designed to "produce fuller and more exact testimony" or to "clarify points and elicit additional facts." *People v Smith, supra,* p 267. The trial court assumed the prosecutor's role with advantages unavailable to the prosecution, i.e., use of leading questions. Moreover, the trial court's questions may well have been interpreted as the court's seal of credibility on the complainant's testimony.

In the second instance, the trial court questioned defendant's alibi witness about his testimony that he received a phone call from the defendant at the time the crime was allegedly committed:

*Mr. Koch:* Thank you, sir.

I have nothing further of this witness.

*The Court:* May I see that piece of paper you have in your hand?

Would you hand it to me, please, Madam Clerk. It's an exhibit.

Sir, on here you started on the 25th. You signed in at 8:30. So that would indicate the time you arrived at the place of employment?

*A.* Exactly.

*The Court:* And it just so happen [sic] that the phone rings and you answered the phone?

*A..* When I came in.

*The Court:* Thank you.

Later the court interjected:

Okay. Anything further?

*Mr. Binion:* Nothing, Your Honor.

*Mr. Koch:* Nothing, Your Honor.

*The Court:* All right. Thank you.

Every morning you sign it at 8:30, right on the nose?

*A.* Yes, I do.

*The Court:* Oh, man, prompt to steps high.

Although the precise translation of the trial court's comment escapes us, we can only conclude from the context that it was a derogatory comment on the credibility of the witness. Viewed together, we conclude that these questions and comments invaded the province of the jury and "pierced the veil of judicial impartiality." *People v Audison,* 126 Mich App 829, 833; 338 NW2d 235 (1983). We have no recourse but to find that defendant was denied a fair trial. The fact that defense counsel made no objection to some of these comments and questions does not alter the result since defense counsel may have been understandably reluctant to challenge the judge's own behavior on the bench. See *People v Smith, supra,* pp 269-270; *People v Redfern, supra,* p 457.

Defendant next raises five separate instances of alleged prosecutorial misconduct committed during trial and during closing argument. We agree that several of these were improper. Defendant first argues that he was denied a fair trial because of the prosecution's extensive questioning and argument about defendant's substitution of counsel, letters from defendant to the court about his case, and defendant's assistance with his defense in the form of taking notes and performing legal research. The thrust of the prosecution's closing argument was that defendant was a "jailhouse lawyer" and "manipulative" because he had requested new attorneys and assisted in his own defense. The strong implication of the prosecution's argument was that these facts somehow tended to prove defendant's guilt.

We fail to see how this evidence could possibly be relevant to the issue of defendant's guilt. Moreover, the prosecution's argument tended to chill the defendant's exercise of his constitutional right to the effective assistance of counsel. That right includes the right to assist in his own defense. *People v Henley,* 26 Mich App 15, 25; 182 NW2d 19 (1970). The prosecution's argument shows a calculated and pervasive strategy of penalizing the defendant for the exercise of his constitutional rights by characterizing defendant's actions as manipulative abuses of the "system." Despite the lack of defense objection, we conclude that these remarks, together with other improper remarks discussed below, created a miscarriage of justice. *People v Byrd,* 133 Mich App 767, 781; 350 NW2d 802 (1984).

We also agree with defendant that the prosecution's questions about his sex life were not probative of his guilt, *People v Flanagan,* 129 Mich App 786, 793; 342 NW2d 609 (1983); that the prosecutor

improperly implied during closing argument that there might have been other inadmissible evidence; and that the prosecution made an improper appeal to the civic duty of the jury to rid the community of rapists, *People v Wright (On Remand),* 99 Mich App 801, 808-810; 298 NW2d 857 (1980). Again, defendant did not interpose a timely objection to these questions and remarks. However, in conjunction with the comments characterizing defendant as a "jailhouse lawyer," manifest injustice has resulted.

Defendant next argues that it was error to allow testimony of police officers verifying the description the complainant gave in court of defendant as the same given to them shortly after the crime occurred. We agree. While third-party testimony may relate the circumstances and procedures surrounding an identification, *People v Sanford,* 402 Mich 460, 484-485; 265 NW2d 1 (1978), it is not allowed to bolster the credibility of a witness by relating a consistent description given by that witness. *People v Hallaway,* 389 Mich 265; 205 NW2d 451 (1973). Such testimony is allowed only to rebut impeachment testimony. Since we are remanding on other issues we find it unnecessary to consider whether this error alone, in the absence of an objection, would have required reversal. However, we are satisfied that the cumulative effect of judicial indiscretions, prosecutorial excesses and incorrect rulings on evidentiary questions deprived defendant of a fair trial.

We find no merit in defendant's argument that resentencing is required because the trial court denied his request to take a polygraph examination made after his conviction but before sentencing. MCL 776.21(5); MSA 28.1274(2)(5) provides that "[a] defendant who *allegedly* has committed a crime under section 520b to 520e and 520g of Act

No. 328 of the Public Acts of 1931 [criminal sexual conduct statute] *shall* be given a polygraph examination or lie detector test if the defendant requests it." (Emphasis added.) The statute is silent about the time when the test must be administered. See *People v Rogers,* 140 Mich App 576, 579; 364 NW2d 748 (1985). The statutory language is controlling in this case. It provides that the request for the test must be granted where the defendant has "allegedly" committed criminal sexual conduct. Here, defendant had already been found guilty and no longer had a statutory right to the polygraph examination.

We also find no merit in defendant's argument that the trial court committed error requiring reversal by "instructing" the jury during voir dire that the armed element of first-degree criminal sexual conduct was satisfied if the victim believed that defendant was armed. The reasonableness of her belief was not an issue at trial since her testimony was that she actually saw the knife.

Also without merit is defendant's argument that resentencing should be granted because the sentence recommendation in the presentence report was not specific as required by statute, MCL 771.14; MSA 28.1144. The report's recommendation of "incarceration" fulfilled the statutory requirement. See *People v Joseph,* 114 Mich App 70, 78; 318 NW2d 609 (1982), lv den 417 Mich 877 (1983). Moreover, the sentencing guidelines now provide more specific standards.

Defendant's final argument raised in a supplemental brief is that the double jeopardy clause barred his retrial after the earlier mistrial.

In *Richardson v United States,* 468 US 317; 104 S Ct 3081; 82 L Ed 2d 242 (1984), the United States Supreme Court held that a retrial of the charges against a criminal defendant after a mis-

trial based upon a hung jury does not violate the double jeopardy clause of the United States Constitution, Am V. The Michigan Supreme Court has since considered the same issue under the state constitution, Const 1963, art 1, §§ 15 and 17, and held that reprosecution after a mistrial caused by the failure of a jury to reach a verdict does not violate the Michigan Constitution. *People v Thompson,* 424 Mich 118; 379 NW2d 49 (1985).

The precise issue raised by the defendant was previously addressed by the Michigan Supreme Court in *People v Hall,* 396 Mich 650, 654; 242 NW2d 377 (1976). The *Hall* Court reasoned:

> Defendant challenges that his second trial after the first trial ended with a hung jury violated his right not to be twice placed in jeopardy under Const 1963, art 1, § 15, citing *People v Duncan,* 373 Mich 650; 130 NW2d 385 (1964). In *Duncan,* as in this case, there was a lengthy period of jury deliberations. In both cases testimony and supplementary charges were given. In contract to *Duncan,* the trial court here followed the better practice (as suggested by *Duncan*) by making further inquiry to determine whether there was any probability that the jury ultimately could agree on a verdict. When the court ascertained there was not, the mistrial was declared. The holding in *Duncan* applies in this case. *The double-jeopardy guarantee does not bar retrial where, as here, the trial court has reasonably concluded that the jury is unable to agree on a verdict.* [Emphasis added.]

Accord: *People v Riemersma,* 104 Mich App 773, 779; 306 NW2d 340 (1981), *People v Harvey,* 121 Mich App 681, 689-690; 329 NW2d 456 (1982).

The record in this case shows that the trial court reasonably concluded that the jury was unable to agree on a verdict. The jury began deliberating at 4:19 P.M. on December 21, 1983. At 12:40

P.M. the following day, the jury sent the court a note saying "Hopelessly Deadlocked." The jury continued to deliberate that day and after a Christmas recess on December 27, 1983. At 3:08 P.M. on the 27th, the trial court finally declared a mistrial because the jury could not reach an agreement. After this lengthy deliberation, we cannot say that the trial court's conclusion that the jury could not agree was unreasonable. Thus, defendant's subsequent retrial was not barred by double jeopardy.[2]

Reversed and remanded for a new trial before a different judge of the Recorder's Court.

---

[2] In a second supplemental brief defendant cites *People v Tyson,* 423 Mich 357; 377 NW2d 738 (1985), for the proposition that double jeopardy bars his retrial because the necessity for a new trial was precipitated by prosecutorial or judicial misconduct. We conclude that *Tyson* does not require a complete dismissal.