# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JACOB DANIEL WEEKS,

        Defendant-Appellant.

UNPUBLISHED
April 12, 2016

No. 325706
Ingham Circuit Court
LC No. 13-0007778-FC

Before: BOONSTRA, P.J., and WILDER and MURRAY, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of assault with intent to do great bodily harm, MCL 750.84, and first-degree home invasion, MCL 750.110a(2). The trial court sentenced defendant to concurrent prison terms of 45 to 120 months for assault with intent to do great bodily harm and 60 to 240 months for first-degree home invasion. We affirm defendant's convictions and remand for resentencing.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant and Tinetha Weeks share a son and, at all relevant times, were married but separated and in the midst of a divorce. On July 27, 2013, defendant ended his visitation with the child by dropping the child off at the former marital home, where Tinetha lived with her boyfriend, Mark Stetson. When Tinetha asked defendant not to enter the home, the pair began arguing. They continued arguing throughout the day and into the night via phone calls and text messages. Around 2:00 am on July 28, 2013, defendant returned to the home. Testimony about what occurred next differed.

According to Tinetha and Stetson, defendant told Stetson to hit him, but Stetson refused. Tinetha suggested that the pair talk at a different time and then headed inside with Stetson, locking the screen door behind her. She claimed that, as she did, defendant yanked the door open and stepped into the doorway. Stetson testified that defendant took out a knife and that a struggle ensued, with defendant swinging the knife and Stetson trying to prevent defendant from stabbing him. When defendant swung the knife, it sliced the right side of Stetson's face from his ear to the middle of his cheek, cut his shirt, cut his chest, and stabbed into his stomach. Dr. David Betten later classified Stetson's deepest abdominal wound as "a non-life-threatening injury," and characterized Stetson's other injuries as "superficial."

-1-

In contrast, defendant testified that he was invited into the home. Defendant testified that Stetson yelled at him outside the home, but that Tinetha then invited him onto the porch. He claimed that he broke the door to the house by accident, apologized for damaging the door, and stepped inside the house to talk to Tinetha. He claimed that, once he was inside, Stetson attacked him and so he pulled out a knife and used it against Stetson in self-defense.

At sentencing, the trial court and counsel discussed the number of points to be assigned to Offense Variables (OVs) 3 and 10. Plaintiff requested an increase (from 10 points to 25 points) for OV 3 on both convictions because of "the testimony from the doctor that Defendant put [Stetson] in critical condition because of the severe amount of bleeding." Defendant objected, arguing that while doctors initially believed that Stetson had suffered "drastic" injuries, doctors "later discovered it wasn't life threatening." The trial court agreed with plaintiff, and assigned 25 points to OV 3 on both convictions. Plaintiff requested an increase (from zero) in the number of points assigned to OV 10, initially requesting 15 points because defendant "show[ed] predatory conduct" in retrieving the knife from his car, and subsequently requesting 10 points because of the domestic relationship between defendant and Tinetha. Defendant objected. The trial court assigned 10 points to OV 10 for defendant's home invasion conviction only.

Using this scoring, defendant's guideline minimum sentencing range for his assault with intent to do great bodily harm conviction was calculated to be 29 to 57 months in prison based on a prior record variable (PRV) level C and an OV level V classification. Accordingly, the trial court sentenced defendant to 45 to 120 months in prison. Defendant's guideline minimum sentencing range for his first degree home invasion conviction was calculated to be 57 to 95 months in prison based on a PRV level C and an OV level V classification. Accordingly, the trial court sentenced defendant to 60 to 240 months in prison. This appeal followed.

## II. JUDICIAL QUESTIONING

Defendant argues that he is entitled to a new trial because the trial court plainly erred in violating his due process right to a fair trial by improperly questioning him about how a knife got into his pocket and whether he purposefully brought a knife to the victims' home. We disagree.

This issue is unpreserved. We review unpreserved issues for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*.

MRE 614(b) permits trial courts to question witnesses. However, the allowable scope of a trial court's questioning is limited. *People v Sterling*, 154 Mich App 223, 228; 397 NW2d 182 (1986). Trial courts "may question witnesses . . . to clarify testimony or elicit additional relevant information." *Id*. The Court in *People v Davis*, 216 Mich App 47, 49-50; 549 NW2d 1 (1996), further suggested that the trial court may "interject itself" and question witnesses in a "lengthy and complex" trial to "resolve confusion" when either "the facts become confused" or the "attorneys are unprepared or obstreperous," to "adequately probe" a "difficult" or "not credible" witness, or to ask a "material question" that attorneys may hesitate to ask for fear of not "knowing the answer." However, a trial court is prohibited from "inva[ding] the prosecutor's role" and, further, must "exercise caution so that its questions will not be intimidating,

argumentative, prejudicial, unfair or partial." *Sterling*, 154 Mich App at 228. The ultimate question regarding whether a trial court erred in questioning a witness is whether that questioning " 'pierced the veil of judicial impartiality.' " *Id.* at 231, quoting *People v Audison*, 126 Mich App 829, 833; 338 NW2d 235 (1983). The Court in *People v Stevens*, 498 Mich 162, 164-165; 869 NW2d 233 (2015), explained that a "judge's conduct pierces this veil . . . when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." We must weigh a series of factors to answer this question,

> including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id.*]

In this case, the trial court permissibly questioned defendant under MRE 614(b) in an attempt to "elicit additional relevant information." *Sterling*, 154 Mich App at 228. Defendant testified that he typically keeps knives in his car for "fishing and hunting," but that he had a knife "in his pocket" when he stepped inside the victims' home. The following colloquy then occurred between the trial court and defendant:

> *Court*. I have one question . . . How did the pocket knife get into your pocket? You said you kept your knives in the car. How did a knife get into your pocket, sir?
>
> *Defendant*. After he charged me I went to go get my cigarettes out of the car, and I put the knife in my back pocket just in case he attacked me, for my protection.
>
> *Q*. So you purposefully went back to the car and obtained a weapon before you went up to the house, is that correct, sir?
>
> *A*. Yes, I guess.
>
> *Q*. Do you understand the word you purposely went back to the car and obtained a weapon?
>
> *A*. I didn't go back to the car to get the knife. I went to get a cigarette.
>
> *Q*. You obtained a knife from the car that was not in your pocket, put it in the pocket and took a weapon to the door, is that correct?
>
> *A*. For my protection.
>
> *Q*. I didn't ask you about your protection. I asked you if you took a weapon to the door?

-3-

*A*. Yes.

How and why defendant came to possess a knife in the victims' home was relevant to elements of both charges. Elements of first degree home invasion include: (1) "defendant either" (a) "br[oke] and enter[ed] a dwelling" or (b) "enter[ed] a dwelling without permission"; (2) "defendant either" (a) "intend[ed to] enter[] to commit a felony, larceny, or assault in the dwelling" or (b) "commit[ted] a felony, larceny, or assault" "while entering, [being] present in, or exiting the dwelling"; and (3) "[w]hile . . . entering, [being] present in, or exiting the dwelling [defendant was] either" (a) "armed with a dangerous weapon" or (b) "another person [wa]s lawfully present in the dwelling." MCL 750.110a(2); *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010). How and why defendant came to possess a knife in the victims' home was relevant to the second element, whether defendant "intend[ed to] enter[] to commit a felony, larceny, or assault in the dwelling." *Id*. Elements of assault with intent to do great bodily harm include: defendant (1) tried to physically injure another; (2) had the ability, or believed he had the ability, to cause injury, and (3) intended to cause great bodily harm. MCL 750.84. How and why defendant came to possess a knife was relevant to all three elements.

Further, the trial court did not pierce the veil of judicial impartiality. *Stevens*, 498 Mich at 164-165.[1] Looking at "the nature or type of [the] judicial conduct," "it is appropriate for a judge to question [a] witness[] to . . . elicit additional relevant information," as occurred here. *Id*. at 172-174. Although we are not able to determine the trial court's "tone and demeanor" from a cold record, our review of the "nature of the words used by the judge," does not reveal any improper "hostility, bias, or incredulity." *Id*. Defendant does not contend otherwise. Additionally, the trial court's questioning was minor in "scope" when considering "the length and complexity of the trial." *Id*. The judge asked defendant only five questions in this two-day trial involving two charges and seven witnesses. The trial court did not direct his questions to only one side, inasmuch as the trial court also briefly questioned Tinetha, the prosecution's witness. *Id*. at 176-177. Both instances of questioning were brief. And the trial court instructed the jury before and after trial that it must decide the case based on the evidence, that questions are not evidence, and that the jurors should disregard any belief that the trial court had expressed an opinion about the facts. *Id*. at 177. Therefore, we do not find error requiring reversal in the trial court's brief colloquy with defendant. *Id*. at 164-165, 178-179.

---

[1] Because the parties submitted their briefs before the publication of *Stevens*, 498 Mich at 164-165, they analyzed the *People v Redfern*, 71 Mich App 452, 457; 258 NW2d 582 (1976), test to determine whether the trial court exceeded the proper scope of judicial questioning. Under *Redfern*, a judge exceeds the permissible scope of witness questioning by "unjustifiably arous[ing] suspicion in the mind of the jury' as to a witness' credibility [that] quite possibly could have influenced the jury to the detriment of defendant's case." *Id*. (internal quotations omitted). We conclude that the trial court's questioning would have satisfied the *Redfern* test as well.

## III. SENTENCING

Defendant argues that the trial court committed three sentencing errors: calculating inaccurate guideline minimum sentence ranges; improperly scoring OV 3; and improperly scoring OV 10. Because the trial court inaccurately calculated the guideline minimum sentence ranges and erred in scoring OV 3, we remand for resentencing.

"A defendant is entitled to be sentenced according to accurately scored guidelines and on the basis of accurate information". *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009). Sentences "rel[ying] on an inappropriate guidelines range" are "invalid." *Id*. We review for clear error a trial court's determination that OV scores are supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

In this case, as the prosecution concedes, the trial court imposed an invalid sentence based on inaccurately scored guidelines. Under the Michigan Sentencing Guidelines, assault with intent to commit great bodily harm is a Class D offense. MCL 777.16d. In total, the trial court assigned defendant 10 points for prior record variables (PRVs) and 55 points for OVs, which made him a level C-V offender on the Class D sentencing grid. MCL 777.65. Defendant was not sentenced as a habitual offender. And the Class D sentencing grid indicates that a C-V, non-habitual offender has a guideline minimum sentence range of 19 to 38 months. MCL 777.65. However, the trial court incorrectly calculated defendant's guideline minimum sentence at 29 to 57 months and, accordingly, sentenced defendant to a minimum of 45 months in prison. This 45-month minimum sentence is above the appropriate guideline sentence range, MCL 777.65, and is, therefore, invalid.

Defendant's sentence for home invasion is similarly invalid. Under the Michigan Sentencing Guidelines, first degree home invasion is a Class B offense. MCL 777.16f. In total, the trial court assigned defendant 10 PRVs, and 65 OVs, which made him a level C-V offender on the Class B sentencing grid. MCL 777.63. The Class B sentencing grid indicates that a C-V, non-habitual offender has a guideline minimum sentence range of 51 to 85 months. MCL 777.63. But in this case, the trial court incorrectly calculated defendant's guideline minimum sentence at 57 to 95 months and, accordingly, sentenced him to a minimum of 60 months in prison. This 60-month minimum sentence is above the appropriate guideline sentence range, MCL 777.63, and is, therefore, invalid.

The prosecution also concedes, and we agree, that the trial court erred in scoring OV 3. OV 3 covers physical injury to the victim and directs the trial court to assign 25 points if "[l]ife threatening or permanent incapacitating injury occurred to a victim," to assign 10 points if "[b]odily injury requiring medical treatment occurred to a victim," or to assign five points if "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1). If "[n]o physical injury occurred to a victim," the trial court must assign zero points. MCL 777.33(1)(f).

In this case, the trial court erred in assigning 25 points for OV 3 for each conviction because Stetson did not suffer a "[l]ife threatening or permanent incapacitating injury." MCL 777.33(1). To the contrary, Dr. Betten testified that once he had fully assessed Stetson's injuries, he determined that the injuries were "non-life-threatening." Further, Stetson did not

testify to any "permanent incapacitating injury." MCL 777.33(1). OV 3 should have been scored at 10 points.

However, we find no error in the trial court's scoring of OV 10. Trial courts assign points under OV 10 when defendants exploit vulnerable victims. MCL 777.40(1). OV 10 directs trial courts to assign 15 points if "[p]redatory conduct was involved," to assign 10 points if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status," or to assign five points if "[t]he offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious." MCL 777.40(1). But if "[t]he offender did not exploit a victim's vulnerability," the trial court must assign zero points. MCL 777.40(1)(d). Therefore, both vulnerability and exploitation are required for the trial court to assign points.

The statute defines vulnerability as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). Here, the trial court assigned 10 points to defendant's home invasion conviction because defendant and Tinetha were in a "domestic relationship." "The sentencing guidelines do not define "domestic" or "domestic relationship." *People v Jamison*, 292 Mich App 440, 445; 807 NW2d 427 (2011). Therefore, this Court in *Jamison* defined "domestic relationship" as either a "familial or cohabitating relationship." *Id*. at 447. This Court in *People v Dillard*, 303 Mich App 372, 375, 380; 845 NW2d 518 (2013), subsequently found a domestic relationship between two persons who were dating and "had a child together."

In this case, defendant and Tinetha were married and had a child together. Although defendant and Tinetha had separated and a divorce was pending, the pair remained legally married and the parents of a minor child. Therefore, a domestic relationship existed between Tinetha and defendant for the purposes of OV 10. *Jamison*, 292 Mich App at 447; *Dillard*, 303 Mich App at 380. Further, there was sufficient evidence that defendant had exploited his domestic relationship with Tinetha. The statute defines exploitation as "manipulat[ing] a victim for selfish or unethical purposes." MCL 777.40(3)(b). Here, defendant exploited his relationship with Tinetha to prompt the home invasion. Defendant was familiar with the home; he had previously lived there. And the home invasion was, essentially, the end result of a day-long argument regarding parenting time and the relationships among defendant, Tinetha, and Stetson. MCL 777.40(1). Further, Tinetha testified that she attempted to calm the situation and suggested that the group sit down and talk over their issues at a later date when defendant arrived unannounced at her home at 2:00 a.m., and that she placed her dog that was trained to protect her in another room when defendant entered the home. It is a logical inference that Tinetha would not have acted in the same manner if a stranger had arrived at the home and forced his way inside in the middle of the night. Therefore, the record supports the trial judge's conclusion that Tinetha was vulnerable to exploitation by defendant by virtue of their domestic relationship, and that defendant in fact exploited that relationship in committing the offenses for which he was charged. OV 10 was properly scored and need not be revisited on remand. See *Dillard*, 303 Mich App at 375-376, 380-381; *Hardy*, 494 Mich at 438.

Because of the mis-scoring of OV 3 and the applicable guidelines minimum sentence ranges, resentencing is required. On resentencing, the trial court should keep in mind our

Supreme Court's holding in *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015), that Michigan's sentencing guidelines are now only "advisory." But, as the *Lockridge* Court noted, the guidelines "remain a highly relevant consideration" that must be " 'consult[ed]' " and " 'take[n] . . . into account.' " *Id*., quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005) (altered here). Therefore, on remand, the trial court should take the accurate, advisory, sentencing guidelines into account (including the corrected score for OV 3), "consider[ing] only the 'circumstances existing at the time of the original sentence.' " *Id*. at 398, quoting *United States v Crosby*, 397 F 3d 103, 117 (CA 2, 2005), abrogated by *United States v Corsey*, 723 F 3d 366 (CA 2, 2013).

Affirmed with regard to defendant's convictions. Remanded for resentencing. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter