# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
November 10, 2015

v

No. 322979
Charlevoix Circuit Court
LC No. 13-011611-FC

JESSE LOUIS ROYSTER,

Defendant-Appellant.

Before: GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

Defendant was convicted by a jury of four counts of third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(b) (force or coercion). The trial court sentenced defendant to concurrent prison terms of 57 months to 15 years. Defendant appeals as of right, and we affirm.

## I. FACTUAL BACKGROUND

After encountering complainant at a dance club, defendant's friends invited her and her friend to defendant's bachelor party at a condominium. Complainant and her friend arrived at around 2:30 a.m. Complainant maintained that after she used the bathroom in the master bedroom, she emerged to find defendant by the bathroom door and the doors to the bedroom closed. She testified that defendant then pushed her onto the bed and sexually assaulted her. Defendant testified that the encounter was consensual.

## II. EVIDENTIARY MATTERS

Defendant first argues that the complainant's statements, admitted through the testimony of the sexual assault nurse examiner (SANE), Stephanie Allers, were inadmissible hearsay. We review a trial court's decision to admit evidence for an abuse of discretion. *People v Ackerman*, 257 Mich App 434, 437; 669 NW2d 818 (2003). An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

MRE 801(c) defines "hearsay" as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, hearsay is inadmissible unless it falls within an exception set forth in the

-1-

Michigan Rules of Evidence. MRE 802; *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). MRE 803(4) provides a hearsay exception for

> [s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

Under MRE 803(4), a statement must be reasonably necessary to the patient's diagnosis and treatment and the declarant must have a self-interested motivation to tell the truth to receive proper medical care. *People v McElhaney*, 215 Mich App 269, 280; 545 NW2d 18 (1996).

Defendant argues that Allers should not have been allowed to testify regarding the complainant's description of the immediate circumstances surrounding the assault. Specifically, defendant argues that MRE 803(4) only allows hearsay statements that identify the perpetrator of a sexual assault, rather than a general description of the assault. To the contrary, MRE 803(4) provides an exception for all statements describing the "cause or external source" of a medical condition insofar as the statements are reasonably necessary for diagnosis or treatment. Particularly in cases of sexual assault where injuries might be latent, "a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). Therefore, the trial court did not abuse its discretion in allowing Allers to testify about complainant's description of the assault. Moreover, the statements were cumulative of complainant's trial testimony, and were therefore harmless. *McElhaney*, 215 Mich App at 283.

Defendant asserts that the trial court also abused its discretion by allowing Allers to testify that complainant's description of the assault was credible.[1] Matters of credibility fall within the province of the jury, so it is generally improper for a witness to provide an opinion on the credibility of another witness. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). In this case, Allers did not testify that complainant provided credible testimony. Rather, she stated that based on the physical examination and her experience examining sexual assault victims, her medical findings were consistent with complainant's description of the assault. This testimony did not constitute improper vouching for the veracity of complainant, so the trial court did not abuse its discretion in allowing the testimony.

Next, defendant argues that the trial court erred in admitting DNA evidence because it was irrelevant. At trial, Michigan State Police serology expert Jennifer Patchin testified that she found evidence of seminal fluid and saliva on samples from complainant's vulva and underwear.

---

[1] Defendant states that Allers "covered scenario by scenario, e.g. not calling out, not complaining to [her friend], [and] not immediately reporting to the authorities." However, questioning regarding complainant's behavior during and after the assault occurred during the testimony of Barbara Cross, who was qualified as a sexual abuse expert, not during Allers's testimony. Defendant does not argue that Cross's testimony was inadmissible for any reason.

Michigan State Police DNA expert Katherine Merideth testified that there was insufficient DNA material to identify a donor and forwarded the sample for further testing. Lastly, Michigan State Police DNA expert Kate Herrema found the male Y-STR DNA sample in the underwear submitted by complainant matched defendant's Y-STR DNA. Herrema explained that the odds of a match were 1 in 1,852, and defendant's male relatives on his father's side would also match the profile.

Defendant did not object to this evidence at trial, rendering this issue unpreserved. We review unpreserved issues for plain error affecting substantial rights. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Defendant argues that the DNA evidence was irrelevant because he admitted that he engaged in intercourse with complainant, so the only issue in dispute was consent. However, an element of CSC III is sexual penetration, MCL 750.520d(1)(b), and the prosecutor was "required to prove each element of [the] charged offense regardless of whether the defendant specifically disputes or offers to stipulate any of the elements." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 544; 775 NW2d 857 (2009). Although defendant did not contest that he engaged in sexual relations with complainant, the prosecution was not relieved of its duty to prove all of the elements of CSC III. The DNA evidence was helpful to meet this burden.

Defendant also argues that the DNA evidence was unfairly prejudicial because the jury would assign disproportionate weight to scientific evidence. However, the scientific evidence supported that defendant was sexually involved with complainant, which he admitted. Accordingly, defendant cannot show that introduction of this evidence was plainly erroneous, or that it affected his substantial rights.

III. JUROR MISCONDUCT

Defendant next argues that the trial court erred in denying his motion for a new trial and by failing to declare a mistrial due to juror misconduct. Below, defendant moved for a new trial after the trial court received a letter and affidavit regarding the conduct of the jurors during deliberations. In a letter to the trial judge, Juror No. 8 stated that he was the lone juror that required convincing to convict defendant and that he felt bullied to change his verdict. Defense counsel stated in an affidavit that the jury foreman told him Juror No. 8 had researched penalties for the charged crimes on the internet and said that he could not allow defendant to serve the projected sentence. Counsel believed that Juror No. 8 only changed his vote due to peer pressure and fear that the other jurors would inform the judge of his behavior. Following a hearing, the trial court denied defendant's motion for a new trial.

We review a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Terrell*, 289 Mich App 553, 558; 797 NW2d 684 (2010). A defendant has a right to a fair and impartial jury with jurors who only deliberate about the evidence that is presented in

open court. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). A defendant is deprived of his constitutional rights of confrontation, cross-examination, and assistance of counsel when the jury considers extraneous facts not introduced in evidence. *Id*. However, jurors are presumed to be impartial and the burden is on the defendant to establish otherwise. *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008).

Trial courts can consider juror testimony to impeach a verdict if there is evidence that the verdict was influenced by extrinsic evidence. *People v Fletcher*, 260 Mich App 531, 539; 679 NW2d 127 (2004). To establish that an extrinsic influence on the jury constituted error requiring reversal, the defendant must prove that (1) the jury was exposed to extraneous influences and (2) "these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *Id.* at 540 (citation and quotation marks omitted). To prove the second point, a defendant generally must "demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Budzyn*, 456 Mich at 89.

At the hearing on defendant's motion for a new trial, several jurors testified that Juror No. 8 introduced sentencing information about CSC offenses in an attempt to explain his position and influence the other jurors to find defendant not guilty on one of the four counts. Juror No. 8 indicated that he agreed with the guilty verdict on three counts, but felt pressured with respect to the fourth. Ultimately, Juror No. 8 said he was not threatened and that his vote had nothing to do with the outside research. Because the sentencing information was not introduced at trial and was acquired through Juror No. 8's internet search, the jury was exposed to an extraneous influence. However, defendant cannot demonstrate that the sentencing information adversely influenced the verdict because Juror No. 8 presented it in an effort to influence a verdict of not guilty. Moreover, several jurors testified that they stopped discussion of the information because it was extraneous. They said they discussed the evidence presented at trial to reach their verdict on count four.

Defendant argues that the information influenced the verdict because the jurors threatened to expose the research to the judge, coercing Juror No. 8 to change his mind. Although Juror No. 8 stated that he felt pressure to convict on count four, he indicated that this was due to his disagreement with the other jurors' interpretations of the evidence. There is no evidence to support defendant's claim that Juror No. 8 only changed his vote on the basis of threats or coercion.

Defendant also argues that the trial court should have declared a mistrial based on other extrinsic evidence. During a break in the trial, a juror wrote a note to the trial judge asking, "Do we know why [complainant's] ex-boyfriend . . . committed suicide? Is it relevant to this case?" During complainant's testimony, she mentioned that her ex-boyfriend committed suicide a few months before trial. Therefore, the juror's question did not address extrinsic information, and the trial court did not abuse its discretion in denying defendant's motion for a new trial or in failing to declare a mistrial on the basis of juror misconduct.

-4-

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that the assistance provided by his trial counsel was ineffective. Our review of unpreserved claims of ineffective assistance of counsel, like the one presented here, is limited to errors apparent on the record. *People v Unger* (*On Remand*), 278 Mich App 210, 253; 749 NW2d 272 (2008). To establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2006). To demonstrate prejudice, a defendant must show that absent counsel's errors, there is a reasonable probability that the result of the proceedings would have been different. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Defendant alleges 10 instances of deficient performance by his trial counsel. Two of defendant's allegations refer to defense counsel's questioning of complainant. First, defendant states that counsel failed to impeach complainant with conflicting evidence regarding who she first told about the assault, her ex-boyfriend or her mother. At trial, complainant stated that she first told her ex-boyfriend about the assault, and then her father, followed by several family members. Complainant's testimony during the preliminary examination was consistent with her trial testimony on this issue. Therefore, defendant's argument on this point is without merit.

Defendant argues that counsel failed to impeach complainant with regard to the use of her phone. Defendant asserts that phone records would have shown that complainant was using her phone at a time when she claimed she did not have her phone, specifically during the car ride home from the condominium. Defendant does not cite to the trial court record or phone records to substantiate his claim. Moreover, complainant testified that she sent a text message from the car telling her ex-boyfriend that she had been raped, and then missed a call from him and called him back at 4:00 a.m. when she got home. Complainant did not testify that she did not have her phone during the ride home from the party. Defendant's argument lacks merit.

Defendant argues that counsel was deficient in failing to object to Allers's testimony or to challenge her as an expert on victim behavior. As discussed above, Allers's testimony regarding the history that complainant provided was admissible and Allers did not testify regarding the victim's behavior as defendant asserts. Counsel was not ineffective for failing to make a futile objection. *In re Archer*, 277 Mich App 71, 84; 744 NW2d 1 (2007).

Defendant states that counsel failed to use an expert to challenge the testimony of the sexual abuse expert, Barbara Cross.[2] Counsel's decision regarding whether to call an expert

---

[2] Defendant states, without developing an argument, that the testimony of Cross, Allers, and Herrema should have been challenged in a hearing pursuant to *Daubert v Merrell Dow Pharm, Ins*, 509 US 579, 592-593; 113 S Ct 2786; 125 L Ed 2d 469 (1993). However, defendant offers no argument to suggest that these witnesses should not have been qualified as experts or that their testimony was unreliable.

witness is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). It is not always necessary to retain an expert witness to counter the opposing party's expert because cross-examination may suffice to attack the expert's testimony. *Harrington v Richter*, 562 US 86, 110-111; 131 S Ct 770; 178 L Ed 2d 624 (2011). Moreover, defendant has not offered any proof demonstrating that another expert would have contradicted Cross's testimony. Therefore, defendant has not overcome the presumption that his counsel's decision regarding whether to call an expert witness was sound trial strategy.

Defendant states that counsel was deficient for failing to object to the admission of the DNA evidence, to challenge the evidence with his own expert, or to challenge the validity of the Y-STR DNA evidence. The trial court found that the DNA evidence was admissible during a pre-trial motion hearing. Defense counsel was not required to object to evidence that the trial court had already ruled was admissible. *In re Archer*, 277 Mich App at 84. Moreover, the DNA evidence was admissible, as discussed above, and defendant offers no argument about what a different DNA expert could have testified to. Defendant cites *People v Wood*, 307 Mich App 485, 514-515; 862 NW 2d 7 (2014), to illustrate the limits of Y-STR DNA testing, but the Court in *Wood* concluded that "[a]bundant evidence illustrated that the Y–STR DNA analysis technique" met the criteria for scientific value. Counsel cross-examined Herrema to have her explain that an expanded number of people could match the Y-STR DNA found on complainant. Further, the DNA evidence was not critical in this case because defendant did not dispute that he had sexual relations with complainant.

Defendant states that his counsel failed to present evidence discovered by his private investigator. Specifically, defendant argues that his counsel should have presented a video of complainant, defendant, and his friends dancing at the night club before going to the condominium, evidence from complainant's Facebook page, and additional witnesses who were present and willing to testify. Regarding the video, complainant and defendant both testified to drinking and dancing at the club, and defendant stated that he danced with and kissed girls, but did not meet complainant at the club. It is not evident that a video from the night club would have been helpful to defendant, and it was reasonable trial strategy to avoid showing defendant dancing with and kissing girls at a club while on trial for CSC III.

Regarding the complainant's Facebook page, defendant offers no explanation regarding the content of this material, whether it would have been relevant and admissible, or how it would have helped his defense. Further, regarding the additional witnesses, the failure to call a witness may only constitute ineffective assistance of counsel if it deprives the defendant of a substantial defense. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defendant does not explain what testimony additional guests at the condominium would have provided, or how it would have been helpful to his defense. Therefore, defendant has failed to show that counsel's performance constituted ineffective assistance in this regard.

Defendant states that it was deficient performance to allow another attorney to prepare and present defendant's testimony at trial. Due to the calculated risks of defending difficult cases, defense counsel is given wide discretion in matters of trial strategy. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Using a second attorney to concentrate on preparing and presenting defendant's testimony could have been a sound trial strategy because it may have ensured that one attorney was available to work with defendant while the other

-6-

addressed the entire defense. "A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses." *In re Ayres*, 239 Mich App 8, 22; 608 NW2d 132 (1999). A substantial defense is one that might have altered the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). In this case, defendant argues that he was nervous because trial counsel did not work with him specifically, but he does not contend that he was deprived of any particular defense by trial counsel's division of labor.

Defendant states that counsel was deficient in failing to object to the prosecutor's comments during closing argument. Specifically, defendant argues that his counsel should have objected to the prosecutor's reference to defendant as a predator, the prosecutor's denigration of defendant's theory to the position that either the assault did not happen or it was consensual, and an alleged comment that complainant had "to move from the area." Prosecutors are generally free to argue the evidence and all reasonable inferences arising from the evidence as it relates to their theory of the case. *Unger*, 278 Mich App at 236. However, a prosecutor may not disparage the defendant's exercise of his constitutional rights. *People v Sterling*, 154 Mich App 223, 232; 397 NW2d 182 (1986).

In this case, the prosecutor described defendant as a "predator" who came up north for his bachelor party. The evidence at trial revealed that complainant was alone in a bedroom when defendant locked the door, pushed complainant onto the bed, and assaulted her. There was also evidence that defendant was dancing with and kissing girls at a nightclub before the assault, and that defendant and his friends came up north for his bachelor party. The prosecutor's conclusion that defendant's behavior was predatory was a reasonable inference arising from the evidence and the prosecution's theory of the case. The fact that the prosecutor used colorful rhetoric does not disallow the argument.

Further, the prosecutor's characterization of defendant's theory of the case as coming down to either that the assault did not happen or that it was consensual was based on the evidence presented at trial. The prosecutor explained that defendant could not claim to have had no contact with complainant because of the witnesses present, so he presented a defense of consensual sex. Also, although defendant argues that the prosecutor improperly stated that complainant had to move from the area, he provides no citation to the record to support this assertion. Even if such a comment did occur, it would have been a minor point to the prosecutor's larger argument that complainant had to overcome significant obstacles in order to testify, and that it was unlikely a person would put themselves through all that she had endured to report a lie. Considering the circumstances presented, it is unlikely an objection from defense counsel would have resulted in a different outcome.

Finally, defendant argues that counsel was deficient in failing to emphasize and present argument on complainant's testimony that defendant was not able to place his penis in her vagina. However, complainant clarified that defendant attempted two or three times to put his penis in her vagina, and that it entered slightly, but did not fully enter because it was flaccid. Thus, if defense counsel argued in closing that complainant admitted defendant's penis did not enter her vagina, it would have only invited argument that complainant clarified that defendant penetrated her genitals slightly. Therefore, defendant has not demonstrated deficient performance by his counsel.

-7-

Affirmed.

/s/ Michael F. Gadola
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly