PEOPLE v RIEMERSMA

Docket No. 78-3156. Submitted June 2, 1980, at Grand Rapids.—
Decided April 7, 1981.

Roger W. Riemersma was convicted by a jury in Kent Circuit
Court, John T. Letts, J., of breaking and entering with intent to
commit a larceny. A prior trial on the same charge had been
declared a mistrial when the trial judge determined the jury to
be deadlocked. Subsequent to the larceny conviction, the prose-
cution filed a supplemental information charging defendant as
a second offender. Defendant was convicted on the supplemen-
tal charge following a bench trial. Defendant appeals, alleging
double jeopardy, insufficiency of the proofs as to intent and
identification, prosecutorial misconduct during closing argu-
ment, error by the trial judge in failing to properly charge the
jury on lesser included offenses, error by the trial judge in
failing to grant a new trial on the basis of jury misconduct, and
error arising out of the prosecution's failure to bring timely the
second offender charge. *Held:*

1. Double jeopardy does not attach where the declaration of a
mistrial resulted from manifest. necessity. A deadlocked jury
establishes the necessary manifest necessity for declaring a
mistrial and the trial court's determination that the jury is
deadlocked must be accorded great deference.

2. Since the intent to steal element of the crime of breaking

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 180.
[2] 21 Am Jur 2d, Criminal Law § 204.
  76 Am Jur 2d, Trial § 1109.
[3] 75 Am Jur 2d, Trial §§ 550-552.
[4] 13 Am Jur 2d, Burglary § 52.
[5, 6] 13 Am Jur 2d, Burglary § 44.
  29 Am Jur 2d, Evidence §§ 378, 379.
  Evidence of trailing by dogs in criminal cases. 18 ALR3d 1221.
[7] 75 Am Jur 2d, Trial § 260.
[8] 75 Am Jur 2d, Trial § 876.
[9] 76 Am Jur 2d, Trial §§ 1219, 1225.
[10] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders
  § 32.

and entering with intent to commit a larceny is difficult, if not impossible, to prove by direct evidence where the criminal act is interrupted before it can be completed, that element may be established by inferences drawn from circumstantial evidence. The evidence presented by the prosecution, when viewed in the light most favorable to the prosecution, was sufficient to justify the jury in finding that the defendant had the necessary intent to steal. The trial court, accordingly, properly denied defendant's motion for a directed verdict.

3. There was sufficient identification evidence, since the identification of the defendant through tracking dog evidence was corroborated by other circumstantial identification evidence. The tracking dog evidence was properly admitted, since the necessary foundation was established by evidence relative to the dog's and the handler's qualifications, experience, training and prior record of reliability and evidence that the dog was placed on the trail of the alleged guilty party and that the trail was not stale or contaminated.

4. The prosecution's arguments were within the range of proper inferences drawn from the facts in evidence. While the prosecutor should not have elicited the evidence relating to the defendant's prior wrongful act, that error was harmless error.

5. The trial court properly refused to instruct the jury as to the lesser included offense of breaking and entering without permission, since such offense is a misdemenaor punishable by a sentence of less than two years in prison.

6. The trial court properly denied the motion for a new trial, since the affidavit seeking to impeach the jury's verdict alleged acts inherent in the jury's verdict itself. After a jury has been polled and discharged, the jury's verdict can be impeached only by a showing of overt acts constituting extraneous or outside error, such as undue influence by outside parties.

7. Since the appeal in this matter was pending in the Court of Appeals on August 28, 1979, the holding in *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979), is applicable. Accordingly the sentence as a second offender must be vacated.

Affirmed in part, reversed in part and remanded for sentencing.

1. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — MISTRIAL — MANIFEST NECESSITY.

The question of whether the constitutional prohibition against double jeopardy applies to a retrial following a declaration of a mistrial to which neither the defendant nor defense counsel

consented depends on whether manifest necessity caused the declaration of a mistrial.

2. TRIAL — MISTRIAL — DEADLOCKED JURY — APPEAL.

Manifest necessity for a mistrial is established where a jury is unable to reach a verdict; the trial judge's determination that the jury is deadlocked such that a mistrial must be declared is to be accorded great deference by a reviewing court.

3. CRIMINAL LAW — DIRECTED VERDICT — EVIDENCE.

A directed verdict of acquittal premised on an alleged insufficiency of the evidence requires the court to determine whether the evidence presented by the prosecution, viewed in the light most favorable to the prosecution, would justify a reasonable fact-finder in concluding that the requisite elements of the crime had been proven beyond a reasonable doubt.

4. BURGLARY — INTENT — EVIDENCE — CIRCUMSTANTIAL EVIDENCE — STATUTES.

The intent to steal element of the crime of breaking and entering with intent to commit a larceny is difficult, if not impossible, to prove by direct evidence; such element may, therefore, be established by inferences drawn from circumstantial evidence (MCL 750.110; MSA 28.305).

5. CRIMINAL LAW — EVIDENCE — TRACKING DOGS.

Tracking dog evidence is properly admitted where the requisite foundation is laid, including evidence of the prior experience of the dog and handler, evidence that the dog was placed on the trail of the alleged guilty party, and evidence that the trail was not stale or contaminated.

6. CRIMINAL LAW — EVIDENCE — TRACKING DOGS — IDENTIFICATION.

Tracking dog evidence is sufficient to establish identification of an accused beyond a reasonable doubt where an adequate foundation for the tracking dog evidence is laid and there is other circumstantial evidence which tends to corroborate the identification of the accused as the perpetrator of the crime.

7. CRIMINAL LAW — PROSECUTORIAL ARGUMENT — INFERENCES.

It is not improper for a prosecutor to suggest in his argument that the jury should draw inferences from the evidence where the inferences to be drawn are from the facts in evidence.

8. CRIMINAL LAW — LESSER INCLUDED OFFENSES — MISDEMEANORS.

It is proper for a trial court in a trial for breaking and entering with intent to commit a larceny to refuse to charge the jury on

the lesser included offense of breaking and entering without permission, a misdemeanor punishable by a sentence of less than two years in prison.

9. Jury — Verdicts — Impeachment of Verdicts.

Affidavits or oral testimony may not be used to impeach a jury's verdict after the jury has been polled and discharged where such impeachment deals with mistakes or misconduct inherent in the verdict rather than with overt acts constituting extraneous or outside error such as undue influence by outside parties.

10. Criminal Law — Habitual Offenders — Filing of Charges — Appeal — Retroactivity.

A holding of the Supreme Court that convictions as a habitual offender must be reversed if the habitual offender charges were not brought by the time the last underlying felony was charged is applicable to an appeal pending in the Court of Appeals on the date of the Supreme Court decision where the issue was raised during the pendency of the appeal.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *David J. Butler,* Assistant Prosecuting Attorney, for the people.

*Williams, Damon & Reis* (by *Jack E. Frost),* for defendant on appeal.

Before: R. B. Burns, P.J., and MacKenzie and J. T. Kallman,* JJ.

MacKenzie, J. On May 3, 1978, defendant was convicted by a jury of breaking and entering with the intent to commit larceny, contrary to MCL 750.110; MSA 28.305. Subsequent to that conviction, the prosecutor filed a supplemental information charging defendant as a second felony offender, MCL 769.10; MSA 28.1082, and defendant was convicted on that charge in a bench trial on June 28, 1978. Defendant was sentenced to a term

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

of 5 to 22-1/2 years imprisonment and appeals as of right.

Initially, defendant contends that his right to be free from being twice placed in jeopardy for the same offense was violated by retrial after the first trial ended in mistrial. Clearly, neither defendant nor defense counsel consented to the mistrial on the record, therefore, resolution of the question depends on whether manifest necessity caused the declaration of mistrial. *Arizona v Washington,* 434 US 497; 98 S Ct 824; 54 L Ed 2d 717 (1978).

In *Arizona v Washington,* the Supreme Court held that the prosecutor has the burden of demonstrating manifest necessity for any mistrial declared over defendant's objection. 434 US 505. An important factor to consider is the reason for the declaration of mistrial:

" 'The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by judge or prosecutor" * * * threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant.'

"Thus, the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused.

"At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial. The argument that a jury's inability to agree establishes reasonable doubt as to the defendant's guilt, and therefore requires acquittal, has been uniformly rejected in this country. Instead, without exception, the

courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." (Footnotes ommitted.) *Arizona v Washington, supra,* 434 US 508-509, quoting *United States v Dinitz,* 424 US 600, 611; 96 S Ct 1075; 47 L Ed 2d 267 (1976).

Notably, the trial judge herein declared a mistrial based on his assessment of a jury deadlock. Following jury deliberations for three and one-half hours, the jury foreman informed the judge that the rereading of testimony did not move either position of the members of the jury. The foreman stated it was very doubtful that a verdict could be reached and that "[i]t looks like a deadlock situation as I see it". In response to the court's question of whether further deliberations would be helpful, the foreman said, "I don't think that a continuation of our deliberations today would, in effect, be helpful in reaching a verdict". Although the judge's decision to declare a mistrial seemed to be based in part on the fact that it was the end of the jury term, he apparently weighed the probability of whether the jurors could reach a verdict by staying over and decided further deliberations would not be helpful. When the trial judge considers the appropriate factors, it is not our function to second-guess him. Similarly, in *Arizona v Washington, supra,* the trial judge did not state expressly on the record that he had found manifest necessity to declare a mistrial. Nevertheless, his decision was upheld by the Supreme Court, which found that the record reflected the high degree of necessity necessary for a declaration of a mistrial.

Further, the Supreme Court gave the following

rationale for deferring to the trial judge's determination of a hung jury:

"Moreover, in this situation there are especially compelling reasons for allowing the trial judge to exercise broad discretion in deciding whether or not 'manifest necessity' justifies a discharge of the jury. On the one hand, if he discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.' But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. If retrial of the defendant were barred whenever an appellate court views the 'necessity' for a mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court. (Footnotes omitted.) 434 US 509-510.

See also *People v Bennett,* 84 Mich App 408, 413; 269 NW2d 618 (1978), *People v Hoffman,* 81 Mich App 288; 265 NW2d 94 (1978). Here, the trial judge did everything in his power, including rereading of requested testimony, to assist the jury in reaching a verdict. Distinguish *People v Blackburn,* 94 Mich App 711; 290 NW2d 61 (1980). In summary, defendant's double jeopardy claim is denied.

Defendant next alleges that the trial court erred in denying a defense motion for a directed verdict of acquittal premised on the alleged insufficient evidence of the intent to commit another felony

(larceny) incident to a burglary conviction. The requisite legal standard is whether the evidence presented by the prosecution up to the time the motion is made, viewed in the light most favorable to the prosecution, justified a reasonable fact-finder in concluding that the requisite elements of the crime were proved beyond a reasonable doubt. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979).

Complainant testified at trial that she left home at approximately 6:10 p.m. on February 16, 1977, and, upon returning about one hour later, got out of her car and noticed someone about six feet away from her front door. When she entered her home, she observed glass all over the landing. She testified that the bottom window above the doorknob of the door had been broken and that the front and storm doors, which had not been used all winter, had been unlocked and opened. Complainant testified that she noticed a set of footprints in the snow which she was sure belonged to the person whom she had seen when she had arrived home.

Assuming that defendant was the person who broke into complainant's house, which will be discussed *infra,* a logical inference may be drawn that he did so, while the occupants were away, for the purpose of committing a larceny but was interrupted by complainant before he could remove anything.

Intent to steal in a breaking and entering is difficult, if not impossible, to prove by direct evidence, and, thus, may be established by inferences from circumstantial evidence. *People v Williams,* 94 Mich App 406, 414-418; 288 NW2d 638 (1979). Defendant's contention that the record is equally compatible with the notion that the perpetrator

broke in for shelter or to use bathroom facilities is not a logical conclusion based on the evidence that the house where defendant was staying was only a short distance from the area and defendant took a rather circular route home. In summary, a reasonable fact-finder could find, based on the evidence, that the intent element was established beyond a reasonable doubt.

Defendant argues that there was insufficient evidence of identification implicating him as the perpetrator of the offense. See *People v Hampton, supra.* The thrust of defendant's argument is that, since tracking dog evidence was the only evidence inculpating defendant, his conviction must be reversed. *People v McPherson,* 85 Mich App 341; 271 NW2d 228 (1978).

The record negates this contention. Complainant testified that she observed the figure of a man near the front of her home around dusk on the evening in question. Defendant was stopped shortly thereafter walking in the area and was questioned by a police officer. That officer testified that he did not mention the breaking and entering to defendant nor was it discussed over the police radio. Yet, when the tracking dog led police to the door of defendant's residence, defendant stated that he believed he was being questioned "about the house B &. E". Defendant was brought to the scene where his bootprint was compared to footprints in the snow which complainant was sure were made by the person she had observed. A police officer testified that it was a perfect match. We conclude that sufficient circumstantial evidence was introduced corroborating the identification of defendant.

In the case at bar, the tracking dog evidence was admissible because the requisite foundation, announced in *People v Norwood,* 70 Mich App 53;

245 NW2d 170 (1976), was established. See also *People v Perryman,* 89 Mich App 516; 280 NW2d 579 (1979). The trainer, Officer James Rabbai, testified regarding his qualifications as a handler and experience training with "Danny" for two years. He stated that the dog had previously been reliable during testing and in prior criminal investigations. Officer Rabbai testified that he started the dog at a footprint in the snow where complainant had seen the person near her house. He chose a footprint approximately two feet from the sidewalk because it was an area uncontaminated by the scents of the investigating officers or other persons. Officer Rabbai did not feel that the proximity of the sidewalk had any bearing on the track because he had pushed Danny's nose into the footprint and the dog apparently picked up a strong scent which he followed directly to defendant's residence, even ignoring a dead cat in his path. Under these circumstances, the tracking dog evidence was properly admitted and, in conjunction with the corroborative circumstantial evidence, justified a reasonable fact-finder in concluding defendant was the culprit beyond a reasonable doubt. *Hampton, supra.*

The next issue is whether reversible error resulted from the prosecutor's argument suggesting that defendant may have hidden in the bushes outside complainant's home before walking to his brother's residence and inviting the jury to look for particles of glass in the soles of defendant's boots. Defendant also contends that the trial judge erred in refusing to give a requested instruction that the jury "disregard any argument which would be based on speculation, particularly argument about tracks in the snow or hiding behind bushes, since there's no testimony to support any

such argument and it's merely speculation". In making such an argument, the prosecutor was not suggesting there was evidence that defendant had hidden in the bushes or that there were particles of glass in the soles of his boots. Contrast *People v McCain,* 84 Mich App 210; 269 NW2d 528 (1978). The prosecutor was merely arguing his theory from the facts in evidence. See *People v Terry,* 86 Mich App 64, 68; 272 NW2d 198 (1978).

Defendant argues that the court erred in allowing the prosecutor to cross-examine defense witness William Bly about a similar wrongful act by defendant. Bly, a friend of defendant, testified over objection that, in the summer of 1977, he had reported to the Grandville police his suspicion that defendant had come into Bly's house while Bly was not home and had removed $7 from Bly's wallet. Bly said that he later asked that charges be dropped because he found $5 of the missing money. Futher, he testified that many of his friends walk right into his house.

Through this line of questioning, the prosecutor elicited evidence of a wrongful act of defendant to prove his conduct in the charged transaction. There was no attempt to qualify this evidence under MRE 404(b), nor would the evidence have been admissible under the relevant criteria. See *People v Major,* 407 Mich 394; 285 NW2d 660 (1979), *People v Wilkins,* 82 Mich App 260; 266 NW2d 781 (1978), *rev'd on other grounds* 408 Mich 69; 288 NW2d 583 (1980). Even accepting the prosecutor's contention that the purpose of the questioning was its bearing on the credibility of Bly, the effect of the testimony was to demonstrate that defendant had a reputation for dishonesty, even among his friends, who believed him capable of a breaking and entering.

This case is somewhat similar to *People v Shelden,* 407 Mich 539; 287 NW2d 176 (1980), where the prosecutor cross-examined defendant's brother about defendant's attempt to bribe a witness in an unrelated criminal case against the brother. In *Shelden,* the Supreme Court found that the cross-examination resulted in reversible error since the outcome of the trial depended to a great extent on the credibility of the witnesses. There, the complainant, who worked with defendant's brother, testified that she was raped by defendant at the house of his brother. In the case at bar, although the outcome hinged to an extent on defendant's credibility, there was evidence besides complainant's testimony linking defendant with the crime; *i.e.,* the tracking-dog evidence, police testimony that defendant's boots matched the footprints, and evidence that defendant was observed in the area about 20 or 30 minutes after the break-in. Admission of the evidence was not as prejudicial because Bly testified that the charges were dropped and that many of his friends walked in unannounced. Additionally, defendant testifed that he had previously pled guilty to a breaking and entering which he admitted committing. In light of this evidence, admission of Bly's testimony was harmless error.

Under the rule in *People v Chamblis,* 395 Mich 408, 429; 236 NW2d 473 (1975), the trial judge acted correctly in refusing to give defendant's requested instruction on the lesser included offense of breaking and entering without permission, a misdemeanor, under MCL 750.115; MSA 28.310. The exception in *People v Miller,* 406 Mich 244; 277 NW2d 630 (1979), does not apply.

Defendant also contends that the trial judge erred in failing to grant a new trial based on alleged jury misconduct. The motion was sup-

ported by the affidavit of another attorney who averred that, while in the trial judge's office, he overheard a loud discussion in the jury room with repeated references to a prior conviction. Further, upon leaving the office and entering the hallway outside the jury room, the attorney overheard additional conversation, summarized as follows:

"(a) A women's [sic] voice stated that he needs some rehabilitation and job training and the only way the Judge can order that is if we convict him.

"(b) A man said that he would feel better if they convicted him and he was innocent than if he was guilty and they let him go and he thought he got away with something.

"(c) A women [sic] said that it was the second time around for him and he might get a substantial sentence.

"(d) A man replied that the most he would get would be ninety (90) days and that would not do him any harm. Further Deponent saith not."

We uphold the decision of the trial judge in denying the motion for a new trial based on this evidence. Once a jury has been polled and discharged, oral testimony or affidavits by its members or outside parties may only be received on "extraneous or outside errors (such as undue influence by outside parties), or to correct clerical errors or matters of form". *Hoffman v Monroe Public Schools,* 96 Mich App 256, 261; 292 NW2d 542 (1980). Mistakes or misconduct inherent in the verdict may not be challenged. *Hoffman, supra, People v Graham,* 84 Mich App 663; 270 NW2d 673 (1978). See also *People v Rushin,* 37 Mich App 391; 194 NW2d 718 (1971).

Finally, defendant argues that his enhanced sentence of 5 to 22-1/2 years imprisonment after being convicted as a second felony offender must

be vacated under the rules in *People v Fountain,* 407 Mich 96; 282 NW2d 168 (1979). In contravention of the rule in *Fountain,* the supplemental information herein was not filed until after defendant's conviction on the charged offense. The prosecution does not allege that additional time was necessary to verify out-of-state felony convictions based on a rap sheet. See *People v Hendrick,* 398 Mich 410; 247 NW2d 840 (1976).

Recently, in *People v Young,* 410 Mich 363, 367-368; 301 NW2d 803 (1981), the Michigan Supreme Court formulated the following rule regarding application of *Fountain:*

"We conclude that *People v Fountain* is applicable to cases pending on appeal on August 28, 1979, the date of decision in *People v Fountain,* provided the issue was raised during the pendency of the appeal; and in cases, the original trial or guilty plea hearing of which concluded 20 days after the date of decision in *People v Fountain*".

Claim of appeal herein was filed on August 7, 1978. The issue was raised on appeal. Thus, under *People v Young,* defendant's enhanced sentence must be vacated and the case remanded for sentencing on the breaking and entering conviction. Defendant's other arguments are without merit.

The breaking and entering conviction is affirmed. The enhanced sentence is vacated, and the matter is remanded for sentencing on defendant's breaking and entering conviction.