# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

NORALEE MARIE HOPE,

      Defendant-Appellant.

UNPUBLISHED
October 18, 2016

No. 324703
Washtenaw Circuit Court
LC No. 14-000280-FH

Before: RIORDAN, P.J., and METER and OWENS, JJ.

PER CURIAM.

Defendant, Noralee Marie Hope, appeals as of right her conviction of domestic assault, third offense, MCL 750.81(4).[1] She was sentenced to 18 months' probation. We reverse and remand for a new trial.

## I. FACTUAL BACKGROUND

This case arises from a confrontation between defendant and Dwayne O'Banner, who were in a dating relationship, on May 2, 2014. At trial, O'Banner described the incident as follows: At approximately 8:00 a.m., the couple got into a disagreement, and O'Banner expressed his intention to leave defendant's apartment permanently. When O'Banner began to pack his things, defendant entered the room and stated that he was not leaving. O'Banner continued to collect his belongings, prompting defendant to grab and jump on him, which resulted in O'Banner falling on the bed with defendant on top of him. She then ripped off his shirt and struck him numerous times on the head. O'Banner told defendant to stop hitting him or else he would call 911, and she replied that he was not going to call 911. O'Banner then attempted to retrieve his cell phone from his pants pocket and defendant ripped his pocket as she attempted to take it away.

---

[1] MCL 750.81 was amended by 2016 PA 87, effective July 25, 2016. In addition to other substantive changes to the text of the statute, domestic assault, third offense, is now codified under MCL 750.81(5).

-1-

Eventually, O'Banner was able to run from the apartment, enter his car, and call the police. Defendant followed him outside and tried to enter the driver's side of O'Banner's car. When the police arrived, O'Banner was still inside the vehicle, and defendant had returned to her apartment.

Before trial, the trial court granted defense counsel's oral motion to exclude any mention of defendant's prior domestic assault convictions and warrants. Subsequently, the juror at issue in this case stated during voir dire that she knew defendant's daughter through the juror's work at a juvenile detention facility, but she did not believe that her recognition of defendant's daughter would affect her ability to be a fair juror. When the juror was asked whether she had any experience with defendant, the juror responded that she had interacted with defendant during parental visitation, but she could not remember any specific interactions with her. However, the juror could remember particular interactions with defendant's daughter. The juror stated that recognizing defendant's daughter was "just distracting[,] that's all," and she reiterated that she could be fair to defendant despite her familiarity with the daughter. The juror was not removed from the jury panel for cause or by preemptory challenge.

During trial, O'Banner and a responding officer testified on behalf of the prosecution. Defendant did not testify. After the jury rendered its guilty verdict, the juror at issue disclosed that she had knowledge of defendant's previous domestic violence convictions, and she believed that defendant's "troubled or abusive relationship" with her daughter had caused the daughter to exhibit behavioral issues. Defendant moved for a new trial in light of this information, which the trial court denied.

This appeal followed.

## II. FAIR AND IMPARTIAL JURY

Defendant argues that she was denied her right to a fair and impartial jury. We agree.

### A. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision on a defendant's motion for a new trial. *People v Stokes*, 312 Mich App 181, 186; 877 NW2d 752 (2015), lv held in abeyance 878 NW2d 886 (2016). "An abuse of discretion occurs only when the trial court chooses an outcome falling outside the principled range of outcomes." *Id*. (quotation marks and citation omitted). "A trial court's factual findings are reviewed for clear error," which "exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). Ultimately, however, we review *de novo* a defendant's claim that she was denied the right to a fair and impartial jury. *Stokes*, 312 Mich App at 186.

### B. ANALYSIS

Criminal defendants have a constitutional right to a fair and impartial jury. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). "During their deliberations, jurors may only consider the evidence that is presented to them in open court." *Id.* "Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of

confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *Stokes*, 312 Mich App at 187 (quotation marks omitted), quoting *Budzyn*, 456 Mich at 88.

Jurors are presumed to be impartial, and the defendant bears the burden of demonstrating that a juror was partial "or at least that the juror's impartiality is in reasonable doubt." *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008). To warrant reversal on the basis of an extraneous influence, a defendant must show that (1) "the jury was exposed to extraneous influences" and that (2) "these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *Budzyn*, 456 Mich at 88-89; see also *Stokes*, 312 Mich App at 187. "[In] proving this second point, the defendant will demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Budzyn*, 456 Mich at 89. If a defendant meets these two requirements, the burden shifts to the prosecution "to demonstrate that the error was harmless beyond a reasonable doubt." *Id*. The error is harmless if "the extraneous influence was duplicative of evidence produced at trial or the evidence of guilt was overwhelming." *Id.* at 89-90.

"[T]he distinction between an external influence and inherent misconduct is not based on the location of the wrong," such as whether the influence arose from inside or outside the jury room. *Budzyn*, 456 Mich at 91. "Rather, the nature of the allegation determines whether the allegation is intrinsic to the jury's deliberative process or whether it is an outside or extraneous influence." *Id.* Likewise, the United States Supreme Court has recognized that, in general, "information is deemed 'extraneous' if it derives from a source 'external' to the jury," and provided the following examples: " 'External' matters include publicity and information related specifically to the case the jurors are meant to decide, while 'internal' matters include the general body of experiences that jurors are understood to bring with them to the jury room." *Warger v Shauers*, ___ US ___; 135 S Ct 521, 529; 190 L Ed 2d 422 (2014).

In support of her claim on appeal, defendant proffers an affidavit prepared by the juror at issue, which was not included in the lower court record. See MCR 7.210(A)(1). We usually will not consider expansions of the record on appeal. See *People v Seals*, 285 Mich App 1, 20-21; 776 NW2d 314 (2009); *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). However, this Court may, "in its discretion, and on the terms it deems just[,] . . . permit amendments, corrections, or additions to the transcript or record." MCR 7.216(A)(4). The appropriate means for a party to amend the record on appeal is by motion. See *People v Lee*, ___ Mich App ___, ___ n 3; ___ NW2d ___ (2016) (Docket No. 322154); slip op at 2 n 3. Nevertheless, because the affidavit is significant, and a remand to supplement the record would be a waste of judicial resources, we will exercise our discretion and consider the enlarged record. See *id*.

Additionally, it is important to note that, in general, a juror's postverdict affidavit cannot be used to impeach the verdict, but "oral testimony or affidavits may . . . be received on extraneous or outside errors[.]" *Budzyn*, 456 Mich at 91. See also *People v Pizzino*, 313 Mich 97, 105; 20 NW2d 824 (1945); *Budzyn*, 456 Mich at 119 (MALLET, C.J., concurring in part and dissenting in part); *People v Riemersma*, 104 Mich App 773, 785; 306 NW2d 340 (1981). Because defendant's claim is that the jury's verdict was affected by an extraneous influence, and

the juror's affidavit offers evidence of that extraneous influence, we will consider the affidavit. *Id.*

It is clear that at least one member of the jury was exposed to an extraneous influence, thus meeting the first prong of the *Budzyn* test. See *Budzyn*, 456 Mich at 88-89; *Stokes*, 312 Mich App at 187. In her affidavit, the juror stated that she was very familiar with defendant's daughter and her family background, and that the juror had seen defendant when she visited the daughter. The juror further believed, based on her knowledge of defendant's daughter and her family, that defendant and her daughter had a "troubled or abusive relationship" and there were "anger and abuse problems" within defendant's home, both of which affected the daughter's behavior. Moreover, the juror had prior knowledge that defendant "had been involved with domestic violence issues in the past." From these statements, it is apparent that, at a minimum, the juror was exposed to facts that were not admitted into evidence, that were not intrinsic to the jury's deliberative process, see *Budzyn*, 456 Mich at 88, 91; *Stokes*, 312 Mich App at 187, and that were not part of the "general body of experiences" that we would expect jurors to bring to the jury room, see *Warger*, 135 S Ct at 529. To the contrary, the juror's knowledge specifically involved the defendant in this case as well as prior acts of similar conduct involving defendant's family. In addition, the juror stated:

> I did make an argument in favor of guilt in the jury room towards the end of deliberation when a few other jurors expressed hesitation about voting "guilty." I don't remember whether I mentioned to other jurors what I knew about [defendant] from my previous encounters with her. But it is true that the other jurors all knew that I knew [defendant's daughter] and [defendant], since it was said in open court during voir dire, before the judge asked me to approach the bench.

Thus, we conclude that the jury was exposed to extraneous influences. See *id.* at 88.

Next, under the second *Budzyn* prong, defendant has demonstrated that the extraneous influences "created a real and substantial possibility that they could have affected the jury's verdict." *Budzyn*, 456 Mich at 88-89. In her affidavit, the juror expressed her belief that she made a fair decision to convict defendant based on the evidence admitted at trial. However, she expressly stated that "[her] knowledge of [defendant's] past was on [her] mind throughout deliberations." The juror's knowledge was substantially related to a material aspect of the case because she was aware of defendant's prior instances of domestic assault and she believed, based on her prior knowledge, that defendant had abused her daughter. See *id.* at 89. Further, it is clear that there was "a direct connection between the extrinsic material and the adverse verdict," *id.*, as this case hinged on the credibility of O'Banner, and the defense theory offered by defendant was that O'Banner was not credible because he was "the abuser," not "the abused." Defendant's previous instances of domestic violence and abusive relationship with her daughter directly contradict that defense theory, and references to defendant's prior convictions and warrants were excluded by the trial court. Accordingly, defendant has established the two elements required to warrant reversal on the basis of an extraneous influence. See *Budzyn*, 456 Mich at 88-89; see also *Stokes*, 312 Mich App at 187.

Additionally, the prosecution has not demonstrated that the error was harmless beyond a reasonable doubt. See *Budzyn*, 456 Mich at 89-90. As the prosecution emphasizes, the juror stated during voir dire that she could be fair to defendant, regardless of her familiarity with defendant's daughter. Likewise, in her affidavit, she averred that she "made a fair decision to vote to convict [defendant] based on the evidence." However, the extraneous influence was not duplicative of evidence presented at trial. See *id*. Defense counsel moved prior to trial to exclude all references to defendant's prior convictions for domestic assault, and the prosecution did not present any evidence of those convictions. Further, the evidence of defendant's guilt was not overwhelming. See *id*. Again, defendant's conviction was contingent on the victim's credibility.

On this record, "[w]e cannot say that the extraneous factors may not have affected the . . . jury's verdict." *Id*. at 108. Therefore, we reverse defendant's conviction and remand for a new trial. See *id*.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also raises two ineffective assistance of counsel claims on appeal. In light of our determination that a new trial is warranted, we need not address these claims. Nonetheless, we have reviewed defendant's contentions and concluded that she has failed to demonstrate that defense counsel provided ineffective assistance. See *People v Vaughn*, 491 Mich 642, 669-671; 821 NW2d 288 (2012).

## IV. CONCLUSION

Defendant is entitled to a new trial because the jury was exposed to extraneous influences.

Reversed and remanded. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Donald S. Owens

-5-