# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

HEATHER MARIE GLIDDEN,

      Defendant-Appellant.

UNPUBLISHED
March 14, 2017

No. 329086
Macomb Circuit Court
LC No. 2014-000734-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MARK ANTHONY HEAD,

      Defendant-Appellant.

No. 329248
Macomb Circuit Court
LC No. 2014-000735-FH

---

Before: HOEKSTRA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

In these consolidated appeals, in docket no. 329086, defendant Glidden appeals as of right her jury trial convictions of attempted second-degree home invasion, MCL 750.92; MCL 750.110a(3), and conspiracy to commit second-degree home invasion, MCL 750.157a; MCL 750.110a(3). Likewise, in docket no. 329248, defendant Head appeals as of right his jury trial convictions of attempted second-degree home invasion and conspiracy to commit second-degree home invasion. Because the evidence was sufficient to support defendants' convictions and defendants were not denied the effective assistance of counsel, we affirm.

This case arises from a home invasion in Harrison Township that occurred while the homeowner was out-of-town. The house in question was equipped with seven outdoor security cameras and a "very" loud internal alarm that sounded after 30 seconds if not deactivated on entry. Video footage take from the surveillance cameras shows that, on the morning in question, defendants drove a pick-up truck into the victim's driveway. While Head initially waited in the truck, Glidden approached the front door of the house and spent a few minutes ringing the

-1-

doorbell, knocking on the door, looking in a nearby window, and knocking on the window. After a few minutes, Glidden returned to the truck, and Head approached the house. He devoted the next few minutes to knocking on the door, attempting to tamper with a security camera, walking around the exterior of the house, and peering in windows. Eventually, he returned to the front door, where he proceeded to kick the front door 17 times until the door gave way and he gained entry. Head entered the home briefly, but then quickly exited when the alarm sounded. Defendants then drove away in their truck. No property was taken from the house.

Defendants were later identified based on the video and charged with attempted second-degree home invasion and conspiracy to commit home invasion. A joint trial was conducted, and defendants were convicted as noted above. Defendants now appeal as of right, and we have consolidated their appeals.[1]

## I. SUFFICIENCY OF EVIDENCE

On appeal, defendants first argue that the prosecution failed to present sufficient evidence of intent to commit larceny, a necessary element of second-degree home invasion and therefore the intent necessary for attempted second-degree home invasion as well as conspiracy to commit second-degree home invasion. In particular, relying on *People v Uhl*, 169 Mich App 217, 220; 425 NW2d 519 (1988), defendants emphasize that intent to commit larceny "cannot be presumed solely from proof of the breaking and entering." Given that no property was taken and defendants did not have burglary tools, defendants maintain that there is no evidence of an intent to commit larceny and that the prosecution thus presented insufficient evidence.

This Court reviews challenges to the sufficiency of the evidence de novo. *People v Harverson*, 291 Mich App 171, 175-176; 804 NW2d 757 (2010). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). In reviewing the sufficiency of the evidence, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendants were convicted of attempted second-degree home invasion and conspiracy to commit home invasion. To obtain a conviction for attempting to commit a crime, the prosecutor must show: "(1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which, as it is most commonly put, goes beyond mere preparation." *People v Jones*, 443 Mich 88, 100; 504 NW2d 158 (1993)

---

[1] *People v Glidden*, unpublished order of the Court of Appeals, entered October 19, 2016 (Docket Nos. 329086, 329248).

(citation omitted); MCL 750.92.[2]  In comparison, "[a] criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011); MCL 750.157a.  "The individuals must specifically intend to combine to pursue the criminal objective, and the offense is complete upon the formation of the agreement." *Id.*  "The intent, including knowledge of the intent, must be shared by the individuals." *Id.*  In this case, the attempted offense, which defendants were also charged with conspiring to commit, is second-degree home invasion.[3]  As charged, the elements of second-degree home invasion are as follows:  (1) "the defendant entered a dwelling by breaking or without the permission of any person in ownership or lawful possession or control of the dwelling" and (2) the defendant "did so with the intent to commit . . . larceny." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013); MCL 750.110a(3).

Of the various elements necessary to these offenses, the only question on appeal is whether the prosecutor presented sufficient evidence to establish that defendants intended the commission of a larceny.  "[L]arceny is committed by a wrongful taking from one who has rightful possession." *People v March*, 499 Mich 389, 404; 886 NW2d 396 (2016).  "[T]he specific intent necessary to commit larceny is the intent to steal another person's property." *People v Cain*, 238 Mich App 95, 120; 605 NW2d 28 (1999).  "Intent to commit larceny cannot be presumed solely from proof of the breaking and entering." *Uhl*, 169 Mich App at 220.  "However, intent may reasonably be inferred from the nature, time and place of defendant's acts before and during the breaking and entering." *Id.*  Whether a defendant possessed the requisite intent to steal poses a question of fact for the jury. *Cain*, 238 Mich App at 119.  Given the difficulty of proving an actor's state of mind, minimal circumstantial evidence will suffice to establish intent. *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014).

In this case, viewed in a light most favorable to the prosecution, the facts and circumstances reasonably support the conclusion that defendants intended to steal from the victim's home.  Specifically, the facts show that defendants went to a stranger's house at a time when the house was unoccupied.  Compare *People v Riemersma*, 104 Mich App 773, 780-781; 306 NW2d 340 (1981), with *People v Palmer*, 42 Mich App 549, 552; 202 NW2d 536 (1972).  They drove a borrowed pick-up truck in which it would be possible to transport stolen goods.  See *People v Frost*, 148 Mich App 773, 777; 384 NW2d 790 (1985).  When defendants arrived at the victim's home, they parked their vehicle facing the street, as though poised for easy exit.

---

[2] "[A] defendant may be convicted of an attempt even where the evidence shows a completed crime." *Jones*, 443 Mich at 103.

[3] With respect to Glidden in particular, we also note that the jury was presented with an aiding and abetting instruction.  "To aid and abet the commission of a crime, the crime itself must be proved, and the defendant must have rendered some kind of assistance or encouragement to the commission of that crime with the intent that the crime occur or the knowledge that the principal intended for the crime to occur." *People v Blevins*, 314 Mich App 339, 358; 886 NW2d 456 (2016).

At the house, both defendants took turns looking in windows and repeatedly knocking on the door, from which it can be inferred that they were verifying that the home was in fact unoccupied. Head attempted to adjust or tamper with a security camera, suggesting that he wished to conceal his actions; and such furtiveness can also be considered as indicative of intent. See *People v Bowers*, 136 Mich App 284, 298; 356 NW2d 618 (1984).

After walking around the perimeter of the house, Head then kicked open the front door and gained entry. Indeed, while defendants emphasize that they did not have burglary tools with them, it is apparent that they needed no tools to gain entry; rather, with repeated kicks, Head was able to break the deadbolt and doorframe, crack the door, and ultimately force open the front door. While Head undertook these actions, Glidden sat in the driver's seat of the truck, positioned for a quick exit from the property. Although it is true that Head did not succeed in stealing property from inside the house, Glidden acknowledged to police that she heard the home's alarm sound. Upon the sounding of the alarm, Head exited the home and returned to the truck. Glidden then promptly drove out of the driveway. The fact that Head was interrupted by the alarm before he was able to steal does not mean that there was insufficient evidence of an intent to steal. See *id.*; *Riemersma*, 104 Mich App at 781. Instead, this evidence of flight from the scene can be seen to support the conclusion that defendants intended to steal. See *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995); *Bowers*, 136 Mich App at 298.

Ultimately, defendants' various actions at the house were recorded by the victim's home surveillance system and played before the jury at trial. It was for the jury to determine whether the facts and circumstances demonstrated that defendants intended to commit larceny.[4] *Cain*, 238 Mich App at 119. And, considering the nature, time and place of defendant's acts before and during the breaking and entering, the jury could reasonably infer that defendants intended to commit larceny. See *Uhl*, 169 Mich App at 220. Thus, the evidence was sufficient to support defendants' convictions.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendants argue that they were deprived of the effective assistance of counsel for a variety of reasons. Specifically, Glidden argues that her trial counsel, Maroun Hakim, was ineffective because (1) he failed to present a defense insofar as he failed to cross-examine any witnesses, waived his opening statement, made no request for jury instructions, and failed to set forth a defense in his closing statement, (2) he misunderstood the law and offered a meritless objection to the admission of Glidden's statements to police, (3) he failed to move for a directed

---

[4] In contrast to the inference that defendants' conduct evinced an intent to commit larceny, Glidden testified that they stopped to inquire about a boat trailer in the yard and that they stayed to offer assistance because Glidden thought she heard a distressed voice in the home. The credibility of this story was for the jury. See *Cain*, 238 Mich App at 118-119. Moreover, this version of events was undermined by the fact that the house was actually unoccupied, defendants did not call 911, defendants fled when the alarm sounded, and Glidden did not tell this story to police when initially questioned. Likewise, Head, a professed "scrapper," did not provide an explanation to police for his conduct at the house and instead denied even being "in that area."

verdict at the "appropriate" time, and (4) he failed to request a jury instruction on the lesser included offense of breaking and entering without permission. More generally, Glidden attributes her counsel's overall poor performance to his "distracted state of mind" arising from personal issues, such as his health concerns and his mother's death. In comparison, Head argues only that his trial counsel was ineffective for failing to request a jury instruction on a lesser included offense.

Head did not file a motion for a new trial or a *Ginther*[5] hearing, meaning that he failed to preserve his ineffective assistance of counsel claim. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Glidden filed a timely motion for a new trial and a *Ginther* hearing in the lower court, raising her arguments related to counsel's general distractedness as well as the claim that he performed unreasonably with respect to moving for a directed verdict. The trial court held an evidentiary hearing, after which the court rejected Glidden's claims. Thus, these specific issues have been preserved for review.[6] See *id.* However, Glidden did not raise her other arguments regarding counsel's performance in the trial court, and her remaining arguments are therefore unpreserved. See *id.*

Whether a person has been denied effective assistance of counsel is a mixed question of law and fact. *Id.* "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id.* at 410. However, to the extent defendants' claims are unpreserved, our

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[6] At the *Ginther* hearing, Glidden also testified that Hakim advised her not to take a plea bargain, failed to prepare for sentencing or review the presentencing report (PSIR) with Glidden, and unwisely advised her to take the stand to testify. Glidden recounts this testimony on appeal, but does not develop a legal argument relating to these specific concerns, leading us to conclude that Glidden intends to abandon these issues. See *People v Huffman*, 266 Mich App 354, 371; 702 NW2d 621 (2005). In any event, these issues are without merit. The record shows that Glidden initially entered a plea, but withdrew it voluntarily after learning that, due to an underestimation of her sentencing guidelines, her sentence would likely be greater than originally supposed. Given Glidden's voluntary and informed decision to proceed to trial, she has not shown that any advice by counsel constituted ineffective assistance. See *Lafler v Cooper*, 566 US 156, 164; 132 S Ct 1376; 182 L Ed 2d 398 (2012); *People v Armisted*, 295 Mich App 32, 48-49; 811 NW2d 47 (2011). In addition, the record shows that Glidden chose to testify *against* the advice of counsel. The choice to do so was her own, *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011); and she has not shown counsel was ineffective relative to her decision to testify. Finally, Glidden conceded at the *Ginther* hearing that there were no errors in the PSIR and, at sentencing, Hakim advocated on Glidden's behalf by, for example, asking that Glidden be allowed to participate in a rehabilitation program. Given these facts, Glidden simply has not shown how counsel's performance in relation to sentencing was deficient or how it affected the outcome. See *People v Buie*, 298 Mich App 50, 66; 825 NW2d 361 (2012).

review is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

To establish a claim of ineffective assistance of counsel, "a defendant must show (1) that defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that defense counsel's deficient performance so prejudiced the defendant that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Fonville*, 291 Mich App 363, 382; 804 NW2d 878 (2011) (citation omitted). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). A defendant also has the burden of establishing the factual predicate for an ineffective assistance claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

"Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Decisions regarding what evidence to present, what objections to make, what jury instructions to request, and whether to call or question witnesses are presumed to be matters of trial strategy; and this Court will not substitute its judgment for counsel's regarding matters of trial strategy. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008); *People v Gonzalez*, 468 Mich 636, 645; 664 NW2d 159 (2003); *Davis*, 250 Mich App at 368. Likewise, counsel's decisions regarding closing argument are a matter of trial strategy, *People v Burns*, 118 Mich App 242, 248; 324 NW2d 589 (1982), and "the waiver of an opening statement involves a subjective judgment on the part of trial counsel which can rarely, if ever, be the basis for a successful claim of ineffective assistance of counsel." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

## A. FAILURE TO PRESENT A DEFENSE

On appeal, Glidden faults her attorney for failing to cross-examine any witnesses, for waiving his opening statement, for not requesting any jury instructions, and for failing to set forth a defense in his closing arguments. According to Glidden, these failings deprived her of the opportunity to present a defense. However, contrary to these arguments, counsel clearly presented a defense to the jury, and Glidden has not overcome the presumption that counsel's specific decisions during trial were a matter of trial strategy.

In particular, at trial, counsel presented the jury with a defense of "mere presence," asserting that Glidden was merely present at the scene and was not involved in any crime committed by Head. Consistent with such a defense, Hakim requested a jury instruction on mere presence. Counsel also offered a reason for not cross-examining witnesses, explaining to the jury during closing that such examination was unnecessary because the witnesses "didn't implicate [Glidden] of doing anything." Such a trial strategy was not unsound, particularly in this case where counsel's questions would likely have been largely redundant of those asked by Head's counsel, and thus Glidden's counsel could make the grand claim that there was no need for cross-examination while Glidden still received the benefit of co-defendant's cross-examination of witnesses.

More generally, although counsel did not offer an opening statement, defense counsel provided a cogent closing argument, emphasizing the burden of proof, asserting that there was no evidence to contradict Glidden's testimony that she was looking for a boat trailer and heard noises inside the house, and ultimately arguing that, at most, Glidden was merely present when Head committed a crime. Further, contrary to Glidden's arguments that counsel somehow prevented her from presenting a defense, in addition to counsel's arguments on "mere presence," Glidden in fact testified at trial to offer her version of events. In short, Glidden was not prevented from presenting a defense, she has not shown that counsel's performance fell below an objective standard of reasonableness, and, in view of the video evidence, she has not shown a reasonable probability of a different outcome relating to counsel's alleged failings at trial. See *Fonville*, 291 Mich App at 383.

## B. *MIRANDA* OBJECTION

Glidden also argues on appeal that Hakim's *Miranda*[7] objection to the admission of Glidden's statements to police was an unreasonable mistake because even "[a] law student would know" that the challenged statements, made when Glidden was not in police custody, did not require *Miranda* warnings. See *People v Hill*, 429 Mich 382, 391; 415 NW2d 193 (1987). Essentially, Glidden complains that Hakim misunderstood the law and made a meritless objection. But, given that the statement was properly admitted, she has wholly failed to explain how such a purported misunderstanding affected the outcome of the trial.[8] Thus, she has not established her ineffective assistance of counsel claim. See *Fonville*, 291 Mich App at 383.

## C. DIRECTED VERDICT

Next, Glidden contends that Hakim failed to move for a directed verdict at the "appropriate" time. In other words, although Hakim moved for a directed verdict, he did so after Glidden testified, as opposed to at the close of the prosecution's proofs. There is no rule that requires counsel to move for a directed verdict at the close of the prosecution's case as opposed to later in the proceedings. See MCR 6.419(A) ("After the prosecutor has rested the prosecution's case-in-chief *or after the close of all the evidence*, the court on the defendant's motion must direct a verdict of acquittal on any charged offense for which the evidence is insufficient to sustain a conviction.") (emphasis added). In any event, even assuming the delayed timing of the motion was unreasonable, an earlier motion would also have failed, and thus Glidden cannot prevail on her ineffective assistance claim.

---

[7] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[8] Somewhat nonsensically, Glidden also argues that, if counsel was going to object to the admission of Glidden's statements, he should have done so before trial. However, such an argument must fail because, as Glidden concedes, she was not in custody, meaning that *Miranda* warnings were not required. See *Hill*, 429 Mich at 391. Accordingly, any motion by counsel before trial would have been futile; and, counsel is not ineffective for failing to bring a futile motion. *Buie*, 298 Mich App at 66.

That is, a motion for a directed verdict is reviewed in the same manner as a challenge to the sufficiency of the evidence, except that the only evidence considered is the evidence presented up to the time the motion is made. *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001). As discussed *supra*, the video evidence, which was presented in the prosecution's case-in-chief, provided sufficient evidence to support Glidden's convictions. Accordingly, counsel could not have prevailed on a motion for a directed verdict at the close of the prosecutor's proofs, and counsel cannot be considered ineffective for failing to make a futile motion at that time. See *People v Riley*, 468 Mich 135, 141; 659 NW2d 611 (2003).

## D. LESSER INCLUDED OFFENSE INSTRUCTIONS

Both defendants contend on appeal that their attorneys were ineffective for failing to request an instruction on the lesser included offense of breaking and entering without permission, MCL 750.115(1). "[A] trial court, upon request, should instruct the jury regarding any necessarily included lesser offense . . . if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense, and a rational view of the evidence would support it." *People v Silver*, 466 Mich 386, 388; 646 NW2d 150 (2002). Second-degree home invasion and breaking and entering without permission differ in that home invasion requires an intent to commit "a felony, larceny, or assault" once in the dwelling. See MCL 750.110a(3); MCL 750.115; see also *Silver*, 466 Mich at 392. Consequently, it is impossible to commit second-degree home invasion without committing breaking and entering without permission, and thus breaking and entering without permission is a lesser included offense. Cf. *Silver*, 466 Mich at 392 (holding breaking and entering without permission is a lesser included offense of first-degree home invasion). Given that intent was a disputed element in this case, defendants would have been entitled to a lesser-included instruction had such an instruction been requested. *Id.* at 388.

However, simply because such a request would have succeeded, it does not follow that defendants' attorneys were ineffective for failing to make such a request. "Failing to request a particular jury instruction can be a matter of trial strategy." *Dunigan*, 299 Mich App at 584. In particular, as a matter of strategy, trial counsel may forgo an instruction on a lesser included offense and instead attempt "to force the jury into an 'all or nothing' decision." *People v Rone*, 109 Mich App 702, 718; 311 NW2d 835 (1981). When the strategy is to obtain an outright acquittal—as it apparently was in this case—an instruction on lesser offenses can reasonably be seen as reducing the chance of acquittal.[9] *People v Robinson*, 154 Mich App 92, 94; 397 NW2d 229 (1986); *People v Armstrong*, 124 Mich App 766, 769; 335 NW2d 687 (1983). "The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel." *People v Williams*, 240 Mich App 316, 332; 614 NW2d 647 (2000). In short,

---

[9] We note that this issue was not raised in the trial court or considered at Glidden's *Ginther* hearing, meaning that there has been no factual development of this issue. On the record before us, there is no reason to conclude that the attorneys were not pursuing an "all or nothing" trial strategy.

defendants have not overcome the presumption that their attorneys' decisions not to request a lesser included instruction were a matter of trial strategy. They are not entitled to relief.

## E. PERSONAL ISSUES

Finally, aside from allegations of specific shortcomings by counsel, Glidden broadly asserts on appeal that her counsel was generally "distracted" due to personal issues, including his own ill health and the recent death of his mother. According to Glidden, this general distraction provides the underlying reason for Hakim's specific failures at trial and prevented him advocating for Glidden "in a meaningful way." Factually, such an argument must fail based on the trial court's findings. Notably, following the *Ginther* hearing, the trial court made the factual determination that Hakim credibly testified that he would have alerted the trial court to any personal issues that would have impaired his representation of Glidden. As found by the trial court, Hakim did not report any personal issues because "he did not have such an issue." Given the evidence at the *Ginther* hearing, the trial court's findings were not clearly erroneous. *Petri*, 279 Mich App at 410. Thus, Glidden's argument must fail because she has not established the factual predicate of her claim. *Hoag*, 460 Mich at 6.

Moreover, we note that, as we have discussed, Hakim presented a defense to the jury and, overall, subjected the prosecution's case to meaningful adversarial testing. See *People v Frazier*, 478 Mich 231, 243 n 10; 733 NW2d 713 (2007). Consequently, this is not a case where Hakim's "failure is *complete*" such that prejudice must be presumed. See *id.* at 243-244. Instead, Glidden must show that, but for counsel's failures, it is reasonably probable that the results of the proceedings would have been different. *Id.* Given that we have considered Glidden's specific claims of error and found them to be without merit, we fail to see how Glidden was prejudiced by Hakim's allegedly "distracted state of mind." Thus, Glidden has not established that she was denied the effective assistance of counsel. See *Fonville*, 291 Mich App at 383.

Affirmed.


/s/ Joel P. Hoekstra
/s/ Kathleen Jansen
/s/ Henry William Saad